In re Leonard W. SCHOLL, Debtor.

Mary H. Scholl, Plaintiff,

v.

Leonard W. Scholl, Defendant.

Bankruptcy No. 97–32805DWS.
Adversary No. 98–0060.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

June 4, 1999.

Mark Blank, Jr., Paoli, PA, for plaintiff.

Michael W. Gallagher, King of Prussia, PA, for debtor.

Arthur P. Liebersohn, Philadelphia, PA, Chapter 7 Trustee.

Dave P. Adams, Office of the U.S. Trustee, Philadelphia, PA, United States Trustee.

## *OPINION*

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Plaintiff Mary Scholl has filed an adversary complaint against her estranged husband Leonard Scholl ("Debtor") seeking to protect any equitable distribution award she may obtain in the future from discharge in his Chapter 7 case. She advances two theories to support this result, one of which is the subject of the Summary Judgment Motion (the "Motion") at issue here. In short, she seeks a ruling that she holds a vested, inchoate right to the equitable distribution of marital property and not a claim subject to discharge in Debtor's Chapter 7 case. For the reasons stated below, I agree.[1]

## BACKGROUND

The parties were married on November 27, 1954. After separating on November

---

1. As I agree with Plaintiff, judgment will be granted and her alternative theory, *i.e.*, that if she has a claim, it would be nondischargeable under Section 523(a)(15), need not be addressed.

15, 1993, Plaintiff commenced divorce proceedings in the Court of Common Pleas of Chester County ("State Court") on December 23, 1993. In the divorce action, Plaintiff requested equitable distribution of marital property, alimony pendente lite, counsel fees, and costs. A special divorce master was appointed to take testimony and render a report and recommendation concerning equitable distribution and alimony. The proceedings in the divorce action were stayed by the Defendant's bankruptcy petition, filed on October 20, 1997. Complaint, ¶¶ 2–5; Answer, ¶¶ 2–5.

In his schedules, the Debtor identified the Plaintiff as an unsecured creditor with "possible debt arising from marriage, not including possible or actual support or alimony, in the amount of $135,000." Complaint, ¶ 7; Answer, ¶ 7. The marital property at issue consists of the marital home, the Debtor's pension and his IRA account.[2] Relief from the automatic stay was granted on March 24, 1998 to permit the divorce and equitable distribution proceedings to continue in the State Court. Doc. No. 25.[3] Apart from a certificate of readiness for trial filed on February 11, 1999, the State Court docket indicates that no progress has been made in the divorce action since the automatic stay was lifted, a fact acknowledged with some frustration by the parties' counsel. Case Summary Report for *Scholl v. Scholl,* Court of Common Pleas, Chester Co. Docket No. 93–11699 dated February 25, 1999 (Exhibit to Plaintiff's Motion).

Plaintiff contends that her rights to the marital property subject to future distribution by the State Court are vested property rights not subject to discharge in the Defendant's bankruptcy. *Citing* to *In re Wilson,* 85 B.R. 722 (Bankr.E.D.Pa.1988) and *In re Bennett,* 175 B.R. 181 (Bankr. E.D.Pa.1994), Plaintiff argues that 1) the filing of the divorce action gave her a vested right to seek equitable distribution; 2) by virtue of the divorce action, the State Court holds the marital property *in custodia legis;* 3) the State Court should be permitted to render an ultimate distribution of this marital property; and 4) that plaintiff has been incorrectly listed as an unsecured creditor in the Defendant's schedules. Pl.Mem. at 2–4. In sum, Plaintiff's position is that the outcome of the equitable distribution proceeding is unaffected by the Debtor's bankruptcy.

Debtor, on the other hand, relies upon the definitions of "debt" and "claim" set forth in 11 U.S.C. § 101(12) and (5) as indicative that the breadth of a bankruptcy claim encompasses Plaintiff's rights in the marital property for which Debtor seeks to be discharged. Debtor compares the equitable distribution award to a tort claim, that is nonetheless a claim despite its status as contingent, disputed, and unliquidated. Defendant asserts that Plaintiff's claim should be discharged under § 523(a)(15).

**DISCUSSION**

In *In re Bennett,* 175 B.R. 181 (Bankr.E.D.Pa.1994), I confronted the is-

---

**2.** In a Memorandum Opinion and Order entered on August 26, 1998, I addressed the Trustee's motion objecting to Debtor's exemptions with respect to this IRA. I ruled that the Debtor could exempt $6,200 of the IRA under 11 U.S.C. § 522(d)(5), but that the balance of the IRA was not exempt. There is no evidence in the record concerning the current value of the IRA, and, of course, there is no determination as to how the asset will be distributed in the dissolution proceeding. The impact of today's ruling will give the Debtor an exemption on that portion of the IRA (if any) eventually awarded to him by the State Court, up to $6,200, and the remainder of the *Debtor's* portion of the IRA will be

available to his creditors. The Debtor's estate will not have any rights to that portion of the IRA (if any) awarded by the State Court to Plaintiff.

**3.** I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed. R.Bankr.P. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi,* 1993 WL 69146, at *2 (N.D.Ill.1993); *In re Paolino,* 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa. 1991); *see generally In re Indian Palms Associates, Ltd.,* 61 F.3d 197 (3d Cir.1995).

sue of whether a wife had a claim arising from her marital interest in her estranged husband/debtor's pension that could be discharged in his bankruptcy case. Mrs. Bennett initiated divorce proceedings in 1989. The state court approved the grounds for divorce and ruled that the action was ready for equitable distribution. Before an equitable distribution order could be entered, however, Mr. Bennett filed a Chapter 7 petition. Mrs. Bennett filed an adversary complaint to preserve her right to receive a portion of the debtor's pension, either as a post-petition debt or as alimony nondischargeable under § 523(a)(5). Mr. Bennett claimed the pension as an exempt asset under § 522(d)(10).

Easily concluding that under Pennsylvania law the pension was marital property, I held that Mrs. Bennett's request for equitable distribution of the pension did not give rise to a claim in her husband's bankruptcy case, but instead gave Mrs. Bennett

"the right to secure a court order determining the extent of her interest in the Pension Plan which when secured will under applicable law relating to pension plans be a basis to require the pension plan administrators of the Pension Plan to pay her directly." *Id.* at 183. Thus, her right did not qualify under the Code definition of claim. Noting that "the state law right to seek equitable distribution 'vests' at the time the divorce proceeding is commenced and equitable distribution is requested," *In re Wilson*, 85 B.R. 722, 726 (Bankr.E.D.Pa.1988), I then considered whether Mrs. Bennett's property interest could be cut off by Debtor's subsequent bankruptcy filing,[4] and concluded that it could not since upon the initiation of a divorce proceeding under Pennsylvania law, marital property is placed under the divorce court's jurisdiction to be held *in custodia legis* until the conclusion of the divorce proceeding, *Bennett*, 175 B.R. at 185.[5]

Indeed in 1994, the Pennsylvania Supreme Court affirmed, albeit without opinion, *Fidelity Bank v. Carroll* which relied on the principle of *custodia legis* to protect marital property from a judgment lien arising during the equitable distribution proceedings. 539 Pa. 276, 652 A.2d 296 (1994). *See* pages 640–41 *infra*. Likewise, in *Turocy v. Turocy*, 1994 WL 722775 (W.D.Pa.1994), the district court stated that property was held in *custodia legis* pending the outcome of equitable distribution proceedings and therefore was not subject to judicial liens.

In *Roberge v. Roberge*, 188 B.R. 366, (E.D.Va.1995), *aff'd* 95 F.3d 42, 1996 WL 482686 (4th Cir.1996), the Chapter 7 trustee had relied principally on *Polliard* for the proposition that equitable distribution rights are cut off by a bankruptcy petition. Although construing another state's law, the court's analysis is instructive here:

> With that proposition this Court disagrees. A vested right to equitable distribution is meaningless unless the spouse's interest in the property which is to be equitably distributed also vests. Thus, stating that the filing of a bankruptcy petition cuts off equitable distribution rights because the debtor has retained his pre-divorce interest in the property during the pendency of the divorce proceeding is the same as stating that vested equitable distribution rights are subject

**4.** *Compare In re Cole*, 202 B.R. 356, 359–60 (Bankr.S.D.N.Y.1996) (Under New York law rights in marital property do not vest until entry of judgment dissolving the marriage so that if bankruptcy intervenes before judgment, the trustee's hypothetical lien status cuts off the non-debtor spouse's inchoate rights and leaves her with a general unsecured claim.)

**5.** In so holding, I respectfully rejected two Pennsylvania cases holding otherwise, *i.e.*, *Polliard v. Polliard (In re Polliard)*, 152 B.R. 51 (Bankr.W:D.Pa.1993) and *In re McCulley*, 150 B.R. 358 (Bankr.M.D.Pa.1993). Subsequent decisions of the Eastern District of Pennsylvania District and Bankruptcy Courts endorsed this view. *See Ingebrethsen v. Ingebrethsen*, 1998 WL 351730 (E.D.Pa.1998); *Simeone v. Simeone (In re Simeone)*, 214 B.R. 537 (Bankr.E.D.Pa.1997). *Polliard* was premised, in part, on its belief that the Pennsylvania Superior Court's "bright line rule that the filing of a divorce wherein equitable distribution is requested automatically places all marital property in *custodia legis*, thus insulating it from claims of creditors' is somewhat weakened." 152 B.R. at 53. I disagreed with that observation then and find no basis to conclude otherwise today since neither the Pennsylvania Supreme or Superior Courts have, notwithstanding the passage of almost seven years, repudiated that doctrine.

Debtor argues, without any elaboration, that *Bennett* should be limited to its facts.[6] I assume that he means that the holding should be narrowly construed to apply only to a nondebtor's rights in a debtor's pension plan. Making his argument for him, support for that proposition could be found in that portion of the Opinion wherein I discuss the particular attributes of a pension plan which require payment from a third party. I state the following:

> What Plaintiff has is the right to secure a court order determining the extent of her interest in the Pension Plan which when secured will under applicable law relating to pension plans be a basis to require the pension plan administrators of the Pension Plan to pay her directly.

*Id.* at 182. Agreeing with the Court in *Wisniewski v. Piasecki (In re Piasecki)*,

> to divestment upon the filing of a bankruptcy petition.
>
> While vested property rights can be subject to divestment, the mere filing of a bankruptcy petition does not divest otherwise vested equitable distribution rights. Once the right to equitable distribution vests, the parties to the divorce obtain inchoate equitable interests in the marital estate equivalent to the shares to which they are entitled under equitable distribution. The Bankruptcy Code provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Thus, in a bankruptcy proceeding which is commenced after the vesting of equitable distribution rights, only the debtor's inchoate equitable interest in the marital estate becomes part of the bankruptcy estate. The interest is then made choate by the equitable distribution proceeding. To hold otherwise would make the Bankruptcy Code a draconian tool in divorce litigation, because one could then avoid an anticipated unfavorable equitable distribution award by filing bankruptcy.

*Id.* at 368. Indeed in *Roberge*, the court went so far as to protect marital property when the equitable distribution petition was filed after bankruptcy was commenced.

Finally, I note that in *Livingston v. Unis*, 659 A.2d 606 (Pa.Cmwlth.1995), the court cited to 23 Pa.C.S. § 3501(a)(7) as well as *Polliard* for

171 B.R. 49 (Bankr.N.D.Ohio 1994), I found no liability on a claim where the payment obligation was held by a third party, the plan administrators, as opposed to the debtor. The assets that the Scholls' marital estate hold are a pension, an IRA and a residence.[7] It is possible that the ultimate equitable distribution order could require Debtor to transfer some portion of his IRA or the value of the marital residence to Mrs. Bennett on account of her marital interests. Thus, if Bennett were limited to rights in assets that would be collected from third parties, it might not be applicable here. However, I find the principles articulated in *Bennett* to be equally applicable where the assets could upon ultimate equitable distribution involve payment from the debtor spouse.[8]

the view that the wife's interests were subordinate to those of the attaching creditor. However, in that case, the attachment had preceded the filing of the complaint in divorce and subsequent equitable distribution proceedings. *See* note 9 *infra*.

6. Debtor's other argument is that *Bennett* has been "repealed" by Congress' enactment of 11 U.S.C. § 523(a)(15). I fail to understand this contention. Since Bennett holds that the nonspouse's interest is not a claim, § 523(a)(15) which deals with the dischargeability of a debt (*i.e.* liability on a claim) is not implicated.

7. The husband's pension and IRA and the marital residence are acknowledged by the parties here to be marital property as to which the equitable distribution rights attach. Clearly there are a number of scenarios that may result from the equitable distribution of this property, only some of which could result in the payment of money. The parties have not focused on these variables but rather painted with a broad brush when they contest the dischargeability of "any obligation" arising from equitable distribution. Given my conclusion stated below that the nondebtor's rights under equitable distribution are not claims dischargeable in bankruptcy, I need not address the difference between an order to pay or one to transfer marital property.

8. Indeed the *Bennett* decision has been relied upon in cases involving assets other than pension plans. In *Simeone v. Simeone (In re Simeone)*, 214 B.R. 537 (Bankr.E.D.Pa.1997),

The rationale underpinning my ruling in *Bennett* was that the divorce filing and the right to equitable distribution that vested thereupon did not give rise to a "debt" owed by the debtor spouse or a "claim" owned by the nondebtor spouse to be resolved in the debtor spouse's later-filed bankruptcy, but rather gave rise to a property interest in marital property to be equitably distributed in the divorce proceeding. *Id.* at 183. The Code defines a "debt" as "liability on a claim" (11 U.S.C. § 101(12)), and a "claim" as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, ·legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(5). The initial focus of any inquiry under these provisions is upon the concept of a "right to payment." In *Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), the Supreme Court recently discussed these definitions:

A "debt" is defined in the Code as "liability on a claim," § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment," we have said, "is nothing more nor less than an enforceable obligation." *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 559 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990). Those

definitions "reflec[t] Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a 'debt....'"

*Cohen,* 523 U.S. 213, 118 S.Ct. at 1216. Thus, while the bankruptcy concept of a "claim" may be broad, it is not so broad as to encompass rights that do not constitute "enforceable obligation[s]" If the mere filing of a divorce action (coupled with an equitable distribution request) does not give rise to an "enforceable obligation" conferring thereby a "right to payment" against the other spouse, then a spouse's later filing of a bankruptcy petition does not give rise to a "claim" owned by the nondebtor spouse and potentially dischargeable in the debtor spouse's bankruptcy case.

■ While the Code defines the term "claim" as, *inter alia,* a right to payment, it does not give any guidance as to when a right to payment arises. Rather that issue is resolved by reference to state law. *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.),* 744 F.2d 332, 337 (3rd Cir.1984); *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (*citing Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946)). In *Frenville,* the Third Circuit concluded that until a cause of action arises, a party does not have a bankruptcy claim because the creditor doesn't have a "right to payment" under § 101(5). Thus, the resolution of whether a claim exists in this case requires an analysis of Pennsylvania domestic relations law.

Section 3502 of Title 23 dealing with domestic relations matters provides for the

for example, Judge Scholl relied upon *Bennett* to hold that upon the filing of a divorce action, the wife's interest in three parcels of real estate was not an unsecured claim dischargeable in her husband's later bankruptcy case. Similarly, in *Ingebrethsen v. Ingebrethsen,* 1998 WL 351730 (E.D.Pa.1998), District Judge Joyner, recognizing that the "interplay between the law of domestic relations and bankruptcy is extremely muddled," relied

upon *Bennett* to hold that "equitable distribution rights to marital property are by definition property interests of the non-debtor (as well as of the debtor) spouse under the Pennsylvania Divorce Code, 23 Pa.C.S. § 3101 et. seq. Consequently, a claim for equitable distribution does not constitute a debt or a claim within the meaning of and is therefore not dischargeable under the Bankruptcy Code." *Id.* at *4.

equitable distribution of marital property. 23 Pa.C.S. § 3502. Subsection (e) is relevant to my analysis. It provides, in pertinent part:

> If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may . . . .

*Id.* § 3502(e). The statute proceeds to list nine remedies available "in addition to any other remedy available under this part." Implicit in this provision is that a court order of equitable distribution or contract gives rise to the remedies available from the court.[9] The parties here have neither reached an agreement on the distribution of their marital property nor has the state court entered an equitable distribution order. Thus, there is no obligation that either spouse can seek to have enforced.

 Further support for this conclusion may be derived from the principle that under Pennsylvania law upon the filing of a divorce action, the marital property in deemed to be *in custodia legis*, or under the wardship of the court pending the outcome of the equitable distribution proceedings and not subject to judicial liens. The consequence of this rule is that creditors of one spouse may not execute on that spouse's interest in the property.[10] *See Keystone Savings Assn. v. Kitsock*, 429 Pa.Super. 561, 567–68, 633 A.2d 165, 168 (1993) (as property is *in custodia legis*,

one spouse's creditor can acquire no greater interest in marital property than that spouse eventually acquires at the time of equitable distribution). Seemingly then the inability of a creditor to attach flows from the absence of any present interest owned by the spouse until the property has been divided. The rationale for this legal principle is explained in *Fidelity Bank v. Carroll*, 416 Pa.Super. 9, 610 A.2d 481(1992), *aff'd mem.*, 539 Pa. 276, 652 A.2d 296 (1994). There the husband's unsecured creditor sought to impose a lien on the marital home that was the subject of an equitable distribution proceeding. Relying on the doctrine of *custodia legis*, the Superior Court reversed the trial court's order validating the judgment lien, noting that the request effectively reduced the wife's interest in the home from 75% as ordered by equitable distribution to 75% of what remained following satisfaction of the creditor's lien. "Thus the trial court's order has undone the economic justice contemplated by the divorce decree." *Id.* at 15–16, 610 A.2d at 484. *See also Klebach v. Mellon Bank, N.A.*, 388 Pa.Super. 203, 565 A.2d 448 (1989). Accordingly, I conclude that while rights to equitable distribution vest against marital property upon the filing of a divorce action, only the entry of an agreement of the parties or an equitable distribution order can create enforceable rights as against a spouse, and thus potentially give rise to a "right to

9. Debtor's comparison of an equitable distribution claim to a tort claim thus is inapposite. A cause of action arises when the plaintiff can first maintain an action to a successful conclusion. *Kapil v. Association of Pennsylvania State College and University Faculties, et al.*, 504 Pa. 92, 98, 470 A.2d 482, 485 (1983). As stated above, an equitable distribution claim will not arise until after an agreement of the parties or the entry of an order by the divorce court. On the other hand, a tort claim arises or accrues when the act constituting the tort occurs, or in some cases, is discovered. *Bradley v. Ragheb*, 429 Pa.Super. 616, 620, 633 A.2d 192, 194 (1993) (in most cases, date injury is sustained); *Marino v. Seneca Homes, Inc. (Appeal of Bove)*, 63 Pa.Cmwlth. 534, 539,

439 A.2d 1287, 1290 (1981) ("As a general rule, in tort cases a cause of action accrues at the time of the act or failure to act upon which the claim is based.")

10. To the extent the property has been mortgaged or encumbered prior to the date of final separation, it is not available for distribution. 23 Pa.C.S.A. § 3501(a)(7). Likewise a lien which attaches after the decree of equitable distribution is effective against the spouse's interest in that property. *Mid–State Bank and Trust Co. v. Globalnet International, Inc.*, 710 A.2d 1187 (Pa.Super.1998) (dissenting judge would apply the *custodia legis* doctrine until the order was fully performed).

payment."[11] Stated another way, absent an enforceable agreement or the entry of an equitable distribution award and order, neither party has a cause of action against the other with respect to marital property. Without a cause of action, no bankruptcy claim arises. Without a claim, there is no debt to be discharged.[12]

A common sense reading of Code § 523(a)(15)[13] supports this conclusion. Prior to the adoption of this provision, non-support, non-maintenance and non-alimony debts (*i.e.*, debts not covered by § 523(a)(5)) were dischargeable. The 1994 amendment expanded the non-dischargeable debts to ones meeting the statutory criteria of subsection (a)(15) provided they were "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record...." In this case, Debtor has failed to identify any debt he *incurred* during the course of his divorce or separation nor is there any separation agreement, divorce decree or other order of court evidencing a

---

**11.** *See also Arleaux v. Arleaux (In re Arleaux)*, 229 B.R. 182, 185–186 (8th Cir. BAP 1999) ("[a divorce] petition is just a petition; where the process concludes is not a certainty. [The husband's] debt, or liability on a claim, arose at the time [the wife's] claim, or right to payment, accrued." Wife's right to payment accrued at the time of the decree dissolution and therefore was a nondischargeable postpetition debt.)

**12.** The court in *In re Perry*, 131 B.R. 763 (Bankr.D.Mass.1991), construed the applicability of the Code definition of claim in a situation procedurally similar to that presented by these parties. In *Perry*, the wife filed a divorce action, and several months later the husband filed a bankruptcy petition. The wife sought relief from the automatic stay to continue the divorce action and secure a transfer of property standing in the debtor's name to her under Massachusetts domestic relations law. The property at issue was two residences in which she held an interest as a tenant by the entirety as well as certain other real estate, cars and other personal property owned solely by the debtor. The court noted that there was no dispute concerning the real property owned by the parties as entireties property. She continued to retain those interests which would be converted to a tenancy in common once the divorce was granted. The more difficult question was the characterization of the non-debtor's rights to the debtor's property which would be subject to transfer depending on the state court judge's application of equitable distribution criteria, some of which have nothing to do with earning capacity or support requirements.

The bankruptcy judge summarily dismissed the applicability of § 101(5)(A), reasoning that he was dealing with a right with respect to property rather than a right to payment. He then turned to the language of subsection (B), *i.e.*, "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment," and found that provision did not fit either. Reasoning that the wife's rights did not arise from a breach of performance but rather from her entitlement under the equitable distribution factors, the court held that these rights did not constitute a claim dischargeable in the debtor's bankruptcy. I agree. Noting that such a conclusion would provide cold comfort to the wife if the debtor could dispose of the property which was part of his bankruptcy estate, 11 U.S.C. § 541(a)(1), for the benefit of his creditors, the court further held that she held an equitable interest in that property more compelling than the interest of a constructive trust beneficiary which would be excluded from the debtor's estate under § 541(d) and therefore unavailable to his creditors.

**13.** Section 523(a)(15) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
\*\*\*
(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B) discharging such debt would result in a benefit to the debtor that outweighs the

debt. The debt, if any, he is concerned about has yet to be incurred. Moreover, § 523(a)(15) requires evaluation of whether the debtor is able to pay the debt (subsection (A)), and whether the balance of harms resulting from the discharge favors the debtor or the nondebtor spouse (subsection (B)). Without a prior equitable distribution order to evaluate, it is impossible to apply these provisions. Until I know how the formerly marital assets have been divided between the debtor spouse and the nondebtor spouse, or how much money the debtor spouse has been ordered to pay to the nondebtor spouse, I cannot determine whether the debtor has the ability to satisfy the award; nor can I assess the relative harms to be caused to the debtor and the former spouse if I were to order the property division or payment "claim" either discharged or nondischargeable.[14] I therefore conclude that Congress did not have in mind the dischargeability of future equitable distribution awards when it enacted § 523(a)(15).

Admittedly the statute could be applied if I awaited the liquidation of the equitable distribution interests. However, this could leave the bankruptcy case in limbo for a protracted period, contrary to the statutory requirement that estates be closed expeditiously. 11 U.S.C. § 704(1).[15] Moreover, since only the bankruptcy court has jurisdiction over a § 523(a)(15) action, it would be in the anomalous position of applying the (a)(15) balancing tests right after the equitable distribution has been adjudicated either by it or the state court. Since the performance of an equitable distribution analysis as required by Pennsylvania law takes into account many of the factors that a bankruptcy judge would be called upon to consider in applying § 523(a)(15),[16] one might expect that the

---

detrimental consequences to a spouse, former spouse, or child of the debtor;

**14.** Since § 523(a)(15) was enacted, numerous bankruptcy opinions have addressed the application of this provision to disputes between debtor and non-debtor spouses. The overwhelming number of these cases arose in a procedural context not present here, *i.e.,* where the parties' divorce action was completed and equitable distribution (or division of community property) was ordered prior to one former spouse's bankruptcy filing.

Here, conversely, the parties' pending divorce action was stayed by Defendant's bankruptcy filing, and no equitable distribution award has been entered. I could locate no case that applied § 523(a)(15) to discharge a future (*i.e.,* unliquidated) equitable distribution award although in several cases the bankruptcy court utilized § 523(a)(15) to consider the discharge of a post-petition award. In *Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132 (9th Cir. BAP 1997), the bankruptcy was filed 15 days before judgment was rendered in a trial of the community property division. The court applied §§ 523(a)(5) and (a)(15) to hold the judgement nondischargeable. The court found that the debtor had waived the right to argue that the postpetition entry of the judgment violated the automatic stay so as to render the judgment voidable and observed that the record was unclear whether the judgment had been fully decided prepetition and entered postpetition or actually litigated postpetition. With the timing issue waived by the debtor and the amount liquidated enabling a § 523(a)(15) ability to pay analysis, the court applied the bankruptcy statute to in effect uphold the state court judgment. However, in *Rul–Lan v. Rul–Lan (In re Rul–Lan)*, 186 B.R. 938 (Bankr.W.D.Mo.1995) and *Newmark v. Newmark (In re Newmark)*, 177 B.R. 286 (Bankr.E.D.Mo.1995), two Missouri bankruptcy judges found liquidated dissolution awards entered post-petition to be on account of claims existing on the commencement of the bankruptcy case and subject to an exception to discharge as prepetition debts under § 523(a)(15).

**15.** While a bankruptcy court has concurrent jurisdiction with the state court to adjudicate equitable distribution, it has no jurisdiction to enter a divorce decree, and equitable distribution may not precede the granting of the divorce. *Dech v. Dech*, 342 Pa.Super. 17, 21, 492 A.2d 41, 43 (1985) (entry of a divorce decree is a prerequisite to entry of an order for equitable distribution and distribution of marital property). Thus, the bankruptcy case could be in an unlimited suspense mode awaiting the divorce decree.

**16.** Pennsylvania's equitable distribution statute, 23 Pa.C.S.A. § 3502, provides as follows:

(a) General rule.—In an action for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, in kind or otherwise, the marital

dischargeability ruling would be influenced thereby. It makes little sense for a court, aware of one spouse's pending bankruptcy, to divide property according to the equities [17] and shortly thereafter this court or another court undo the equitable balance achieved by discharging the award that was just entered.

 In short, I conclude that Plaintiff's vested right to equitable distribution of marital property not yet determined by an order of the state court is unaffected by her estranged spouse's bankruptcy. Plaintiff will take all property awarded to her without regard to any interests her former husband (or his creditors) once had in that property. The balance of the marital property awarded to Debtor will become part of his bankruptcy estate available for distribution to creditors unless otherwise exempted under § 522. Should the ultimate equitable distribution award create an obligation that Debtor pay Plaintiff a defined sum of money (either as a general equalization payment or incident to "buying out" her interest in the marital home) or require him to hold her harmless on any debts incurred during the marriage, such an obligation would be a postpetition obligation not subject to potential discharge in this bankruptcy case. *See In re Degner,*

227 B.R. 822 (Bankr.S.D.Ind.1997) (divorce-related agreement by husband to hold wife harmless on debt was nondischargeable postpetition debt, even though divorce action filed prepetition).

An Order consistent with this Memorandum Opinion shall be entered.

property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors, including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) **The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.**

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) **The opportunity of each party for future acquisitions of capital assets and income.**

(6) **The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.**

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the

marital property, including the contribution of a party as homemaker.

(8) **The value of the property set apart to each party.**

(9) The standard of living of the parties established during the marriage.

(10) **The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.**

(11) Whether the party will be serving as the custodian of any dependent minor children. (emphasis supplied).

17. In *In re Perry*, 131 B.R. at 767, the bankruptcy court observed that the non-debtor's rights to marital property were similar to the rights of a beneficiary of a constructive trust entitled to the exclusion of § 541(d) because those rights were required to be apportioned by the state court applying "basic principles of economic and social justice," and refused to allow their impairment by a bankruptcy discharge.