In re Ronald L. SCHORR, Debtor.

Ronald L. Schorr, Plaintiff,

v.

Deborah L. Schorr, Defendant.

Bankruptcy No. 00–20119 BM.
Adversary No. 02–02666 BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 5, 2003.

Mary Bower Sheats, Esq., for Plaintiff.

John K. Foster, Esq., Pittsburgh, PA, for Defendant.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor seeks a determination that a request for equitable distribution of marital property which was made in their divorce proceeding by his estranged spouse, defendant Deborah Schorr, prior to the filing of debtor's bankruptcy petition constituted a "claim" for bankruptcy purposes. As a consequence, debtor avers, the resultant "debt" was discharged when he received a bankruptcy discharge. In addition, debtor seeks a determination that defendant con-sequently is enjoined from further pursuing her request for equitable distribution in their ongoing divorce proceeding.

Defendant denies that her request for equitable distribution qualified as a "claim" for bankruptcy purposes and insists that no pre-petition "debt" resulted which was affected by the discharge debtor received.

We conclude for reasons set forth below that defendant's pre-petition request for equitable distribution qualified as a "claim" for bankruptcy purposes and that the resultant "debt" for equitable distribution owed by debtor to defendant was discharged in debtor's bankruptcy case. Defendant consequently is prohibited from further pursuing her quest for equitable distribution in their ongoing divorce proceeding.

### – FACTS –

Debtor and defendant in this adversary action are husband and wife, respectively. They have been estranged since at least September of 1999.

Debtor commenced a divorce proceeding against defendant in state court on September 14, 1999. Defendant requested equitable distribution of marital property in her answer and counterclaim to the complaint, which was filed on October 4, 1999.

Neither a divorce decree nor an order of equitable distribution was entered in the divorce proceeding prior to January 6, 2000.

Debtor filed a voluntary chapter 7 petition on January 6, 2000, thereby automatically staying adjudication by the state court of defendant's pending request for equitable distribution. To date defendant's request for equitable distribution has not been adjudicated.

The schedules accompanying debtor's bankruptcy petition listed assets with a

total declared value of $17,200.00 and liabilities totaling $37,975.20. Included among debtor's assets were two pensions characterized as having "no cash value" which debtor claimed as exempt in their entirety. No objection was raised to these claimed exemptions. The bankruptcy schedules list defendant as having a contingent, unliquidated and disputed general unsecured claim in an "uncertain" amount arising out of her request for equitable distribution of marital property.

The § 341 meeting of creditors was held on April 7, 2000, after which the chapter 7 trustee reported that debtor's bankruptcy was a no-asset case.

Although she was listed on the schedules and received notice of debtor's bankruptcy filing, defendant chose not to participate in debtor's bankruptcy case. She neither requested relief from the automatic stay to continue her pursuit of equitable distribution in the divorce proceeding pending in state court nor filed a proof of claim in debtor's bankruptcy case. Moreover, she did not object pursuant to 11 U.S.C. § 523(a)(15) to the discharge of any debt for equitable distribution owed to her by debtor.

On April 24, 2000, after the bar date had passed without any objection to debtor's general discharge or to the discharge of any particular pre-petition debt he owed, debtor received a discharge. The bankruptcy case was closed on May 26, 2000, after a final decreed had issued.

Equitable distribution proceedings, which were automatically stayed during debtor's bankruptcy, resumed in earnest in state court after the bankruptcy case was closed. In his opposition to defendant's request for equitable distribution, debtor asserted that defendant's request for equitable distribution constituted a "debt" that had been discharged in his bankruptcy case and that defendant therefore was pro-

hibited by federal bankruptcy law from pursuing the matter in their divorce proceeding.

The learned judge in the divorce proceeding issued an order on September 18, 2002, directing debtor to reopen his bankruptcy case and to obtain a determination from this court concerning the effect, if any, his discharge had on defendant's request for equitable distribution.

On October 22, 2002, after oral argument was heard on debtor's motion to reopen his case, we issued an order reopening the case.

On November 1, 2002, debtor commenced the above adversary action. Debtor asserts in the complaint that defendant's claim arising out of her request for equitable distribution constituted a "debt" that was discharged in his bankruptcy case and that she therefore is enjoined by the Bankruptcy Code from further pursuing in the divorce proceeding her request for equitable distribution.

Defendant denies in her answer to the complaint that her request for equitable distribution was discharged in debtor's bankruptcy case and asserts that the discharge injunction therefore does not apply. Her request for equitable distribution, she maintains, was not affected by debtor's discharge and therefore may now be adjudicated in the divorce proceeding.

Trial in this matter was scheduled for August 4, 2003, wherein each party was permitted to offer any and all evidence deemed appropriate.

The issue now before us in this case is whether, for bankruptcy purposes, defendant had a "claim" against debtor prior to the commencement of his bankruptcy case on January 6, 2000. If she did, the resultant "debt" owed by debtor arising out of her "claim" for equitable distribution was

discharged. If she did not, there was no "debt" owed to her by debtor to be discharged when debtor received a general discharge.

The United States Court of Appeals for the Third Circuit has not decided whether a pre-petition request for equitable distribution that is unresolved when a debtor spouse against whom the request is made receives a bankruptcy discharge constitutes a "claim" for purposes of the Bankruptcy Code. There is a difference of opinion among the courts of this circuit that have addressed the issue.

At least one court fearing potential collusion has held that such a request constitutes a pre-petition claim and may be dischargeable. See Polliard v. Polliard (In re Polliard), 152 B.R. 51, 54 (Bankr. W.D.Pa.1993)(spouse requesting equitable distribution prior to bankruptcy filing has a general unsecured "claim" for an amount representing any equitable distribution award of an interest in debtor's property).

The Polliard court undoubtedly was concerned about avoiding an abusive practice, which can, and frequently does, occur when a chapter 7 debtor is embroiled in a protracted, and sometimes acrimonious, divorce proceeding. Such debtors may be in a position where they stand to "lose everything" either to their creditors in bankruptcy or to their spouse in the divorce proceeding. Moreover, if debtor's assets are distributed to creditors in accordance with the Bankruptcy Code, debtor still may not obtain a divorce. Faced with this dilemma, a chapter 7 debtor might agree to give most, if not all, of their assets to their spouse in order to finally obtain a divorce and leave other creditors with nothing.

Others have held that such a request for does *not* constitute a pre-petition "claim" and consequently that no "debt" for equitable distribution arises that is subject to discharge. *E.g., Scholl v. Scholl (In re Scholl),* 234 B.R. 636, 641–45 (Bankr.E.D.Pa.1999)(request for equitable distribution did not give rise to a "claim" or to a "debt" owed by the debtor spouse in debtor's later-filed bankruptcy).

Debtor urges us to adopt *In re Polliard* and to find that debtor owed a "debt" to defendant that was discharged in his bankruptcy case. Defendant urges us to adopt *In re Scholl* and to find that her request for equitable distribution did not give rise to a debt owed to her by debtor that was discharged in debtor's bankruptcy case.

We will consider in detail the reasoning set forth in *In re Scholl* and shall use it as a vehicle for resolving the issue presented in this adversary action.

The non-debtor spouse in *Scholl* commenced a divorce proceeding against debtor spouse in December of 1993 and thereafter requested equitable distribution of marital property. Before the matter was resolved, debtor spouse filed a bankruptcy petition in October of 1997, thereby automatically staying equitable distribution proceedings in the divorce case. Non-debtor spouse was listed on the bankruptcy schedules as an unsecured pre-petition creditor with "possible debt arising from marriage, not including possible or actual support or alimony, in the amount of $135,000." No equitable distribution order had issued in the divorce proceeding and the parties had not come to an agreement concerning equitable distribution prior to the bankruptcy filing. *Scholl,* 234 B.R. at 637–38.

In contrast to the case at hand, non-debtor spouse requested and was granted relief from stay in March of 1999 to allow the equitable distribution proceedings to move forward in state court. Unfortunately, that court took no action on her request. Also, in contrast to the case at

hand, non-debtor spouse then commenced a timely adversary action [before debtor received a bankruptcy discharge] seeking, among other things, a determination that she did not possess a "claim" for bankruptcy purposes and that debtor did not owe her a "debt" that was subject to discharge in his bankruptcy case. Thereafter non-debtor spouse brought a motion for summary judgment in the adversary action which was granted. *Id.*, 234 B.R. at 637.

*Scholl* ultimately concluded that, in the absence of an agreement between the spouses or a court order of equitable distribution, non-debtor spouse did not have a "claim" for equitable distribution and that debtor owed her no "debt" for equitable distribution that was subject to discharge in his bankruptcy case. Without more, such a request gives rise only to a property right in marital property to be equitably distributed in the divorce proceeding. The analysis in *Scholl* in support of this determination went as follows.

*Scholl* first looked to the following passage from *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998):

> A "debt" is defined in the Code as "liability on a claim", § 101(12), a "claim" is defined in turn as a "right to payment" § 101(5)(A), and a "right to payment", we have said, is "nothing more or less than an enforceable obligation". *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 569, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). These definitions "reflec[t] Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a debt ....' "

Reasoning syllogistically, *Scholl* concluded that the bankruptcy concept of "claim," while broad, "is not so broad as to encompass rights that do not constitute 'enforceable obligation[s].' " *Id.*, 234 B.R. at 641.

One does not have a "claim" for bankruptcy purposes, in other words, unless there is an "enforceable obligation." If the mere filing of a divorce action when coupled with a request for equitable distribution does not give rise to an "enforceable obligation" which in turn gives rise to a "right to payment," a debtor spouse's later filing of a bankruptcy petition does not give rise to a "claim" by the non-debtor spouse that is potentially dischargeable in the debtor spouse's bankruptcy. *Id.*

After deriving this principle, *Scholl* noted that the Bankruptcy Code does not specify *when* a "right to payment" arises for bankruptcy purposes. Applying *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 337, (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), *Scholl* concluded that reference must be made to state law to make such a determination. Until a cause of action arises under state law, a creditor does not have a "claim" because there is no "right to payment." *Id.*

*Scholl* then consulted the domestic relations law of Pennsylvania to determine when a "claim" for equitable distribution arises for bankruptcy purposes. It looked specifically at the following portion of 23 Pa.C.S.A. § 3502(e):

> If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may ....

*Id.*, 234 B.R. at 641–42. The provision then goes on to enumerate nine remedies that are available in such circumstances. Included among the remedies is entry of a judgment. According to *Scholl*, this provision implies that a court order of equitable distribution or a contract gives rise to the

availability of these remedies. *Id.*, 234 B.R. at 641–42.

As was noted previously, the parties in *Scholl* had not reached an agreement concerning equitable distribution of marital property and the court had not issued such an order prior to the bankruptcy filing. From this the court concluded as follows: "Thus, there is no obligation that either spouse can seek to have enforced." *Id.*, 234 B.R. at 642. Put another way, *Scholl* inferred from the above statutory provision that an agreement between the spouses as to distribution of marital property or a court order of equitable distribution is a prerequisite to a non-debtor spouse having a "claim" against the debtor spouse and to the debtor spouse owing a "debt" to the non-debtor spouse that is subject to discharge.

Debtor and defendant in the adversary action presently before us, we noted previously, had not reached agreement concerning equitable distribution of the marital property. Moreover, the court in the divorce action had not issued an order of equitable distribution prior to debtor's bankruptcy filing. Defendant has urged us to apply the above analysis as articulated in *Scholl* to the facts of this case and would have us conclude that debtor in our case owed no "enforceable obligation" to her and therefore that no "debt" arose that was subject to the discharge debtor received on April 24, 2000. We decline to so conclude for various reasons.

To begin with, *Scholl's* reliance upon 23 Pa.C.S.A. § 3502(e) is misplaced. The previously-quoted portion of § 3502(e) in our estimation does *not* support the inference that an agreement between spouses or a court order of equitable distribution is a prerequisite to having an "enforceable obligation" and, hence, to there being a "debt" which is potentially subject to discharge. Section 3502(e) instead only enu-

merates specific remedies that are available to enforce the obligation in the event a party to a divorce proceeding fails to comply when the parties have reached agreement concerning equitable distribution or the court has entered an order concerning same. The latter is a far cry from the former. In fact, the enumeration of nine remedies bolsters the contrary position. There would be no need for remedies if there was not an obligation, debt, or claim to enforce.

■■■ The matter does end there. According to *Frenville*, a "claim" arises for bankruptcy purposes when the cause of action underlying the "claim" arises under Pennsylvania law. 744 F.2d at 337. A cause of action arises under Pennsylvania law when one can first maintain an action to a successful conclusion. *Kapil v. Association of Pennsylvania State College and University Faculties*, 504 Pa. 92, 98, 470 A.2d 482, 485 (1983).

Defendant in this adversary action could have successfully maintained a request for equitable distribution when debtor first commenced the divorce proceeding on September 14, 1999, or, at the latest, when she requested equitable distribution of marital property on October 4, 1999. Her cause of action for equitable distribution arose on one of these dates and therefore arose well before the commencement of debtor's bankruptcy case on January 6, 2000—i.e., it is a pre-petition "claim."

Our rejection of the above analysis set forth in *Scholl* does not end with this. The requirement that there must be either an agreement between the spouses concerning equitable distribution or an order of court concerning equitable distribution before a "claim" can arise is at odds with the definition of "claim" found at § 101(5)(A) of the Bankruptcy Code, which provides as follows:

"claim" means ——

(A) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

11 U.S.C. § 101(5)(A).

According to this definition, "a right to payment" qualifies as a "claim" *without regard to whether such right is reduced to judgment.* The requirement in *Scholl* that there be an agreement between the spouses or a court order of equitable distribution does not square with this portion of the definition of "claim" and for that reason must be rejected.

Policy considerations bolster our construal of when a "claim" and a "debt" arise for bankruptcy purposes and militate against the view embraced in *Scholl. In re Polliard* identifies a potential "evil" in the position, adopted by *Scholl,* that a state court first must determine the respective ownership rights of the spouses to marital property before a bankruptcy court can exercise exclusive jurisdiction only over the property that is awarded to the debtor spouse.

Under this scenario, division of marital property between the spouses takes place in the absence of consideration by any other court of the impact of the division on creditors of the debtor spouse. The debtor spouse may intentionally allow all of the marital assets to pass to the non-debtor spouse, leaving nothing for creditors of the debtor spouse. *Polliard,* 152 B.R. at 54. Our view that the non-debtor spouse has a pre-petition "claim" and that the debtor spouse owes a "debt" to the non-debtor spouse even in the absence of adjudication of the request for equitable distribution avoids this potential "evil." The non-debtor spouse has a "claim" along with debtor's other creditors and shares bankruptcy estate assets on a *pro rata* basis along with

them. If this result is too harsh or unjust, the non-debtor spouse could pursue an adversary action seeking to determine this unliquidated debt to be nondischargeable and payable from assets earned post-bankruptcy.

We conclude on the basis of the foregoing considerations that defendant in this adversary action had "a right to payment" and therefore a "claim" when she requested equitable distribution of marital property prior to the filing of debtor's bankruptcy petition. Debtor, in other words, owed defendant a pre-petition "debt" that had not yet been reduced to judgment when debtor received a discharge.

*Scholl* propounds additional arguments which, it asserts, offer "further support" for the proposition that the non-debtor spouse in that case did not have a pre-petition "claim" against debtor which gave rise to a potentially dischargeable "debt."

According to *Scholl,* it is a principle of Pennsylvania law that marital property is deemed to be *in custodia legis*—*i.e.,* under the wardship of the court—pending the outcome of equitable distribution proceedings and therefore is not subject to judicial liens. A creditor of one of the spouses may not execute on that spouse's interest in the marital property while the property is *in custodia legis. Id.,* 234 B.R. at 642. As authority for proposition, *Scholl* cites to *Keystone Savings Association v. Kitsock,* 429 Pa.Super. 561, 567–68, 633 A.2d 165, 168 (1993).

The inability of a creditor to attach, *Scholl* maintains, "flows" from the absence of any present interest owned by the spouse "until the property has been divided." *Id.,* 234 B.R. at 642. From this *Scholl* concludes that only entry of an agreement by the parties to the divorce action or a court order of equitable distribution "can create enforceable rights as against a

spouse and thus potentially give rise to a right to payment." Without an enforceable agreement or an order of court "neither party has a cause of action against the other with respect to marital property." *Id.*, 234 B.R. at 642–43.

We take issue with this argument for several reasons.

To begin with, the argument relies on the premise that, under the law of Pennsylvania, marital property is automatically deemed upon the filing of a divorce complaint to be *in custodia legis* pending the outcome of equitable distribution proceedings and is not subject to judicial liens while it is *in custodia legis.* As authority for this proposition *Scholl·* cites to *Keystone Savings Association, supra,* a decision of the Superior Court of Pennsylvania.

It is not certain that this is a correct statement of Pennsylvania law and is binding in our case. When applying substantive law, a federal court is not free to impose its own view of what state law should be. It instead must apply state law as interpreted by the state's highest court, in this instance the Supreme Court of Pennsylvania. *Federal Home Loan Mortgage Corp. v. Scottsdale Insurance Co.,* 316 F.3d 431, 443 (3d Cir.2003). The Supreme Court of Pennsylvania has never addressed and decided this issue. *See Mid–State Bank & Trust Co. v. Globalnet International, Inc.,* 557 Pa. 555, 561, 735 A.2d 79, 82 (1999). It is noteworthy in this regard that the concurring opinion in *Keystone Savings Association* questioned the propriety of applying the *in custodia legis* doctrine to marital property in a divorce proceeding. 429 Pa.Super. at 569–70, 633 A.2d at 169.

This is not to say that the *in custodia legis* doctrine categorically does not apply to marital property in divorce proceedings. It is to say only that *Scholl* merely applied the reasoning of *Keystone Savings Associ-*

*ation* without undertaking the necessary analysis to predict whether the Pennsylvania Supreme would apply the doctrine of *in custodia legis* to marital property in a divorce proceeding. In the absence of a reported decision by the Supreme Court of Pennsylvania, a federal court applying state law must undertake a specific analysis in predicting how the Supreme Court of Pennsylvania would apply Pennsylvania law. *See Hughes v. Long,* 242 F.3d 121, 128 (3d Cir.2001). *Scholl* did not undertake such analysis but instead merely relied upon the holding of inferior Pennsylvania appellate courts on this matter, which holding may not be binding on us.

The matter does end there with respect to the first additional argument in *Scholl* which is said to provide "further support" for the conclusion arrived at therein. Even if it is assumed for the sake of argument that the *in custodia legis* doctrine applies to marital property pending its equitable distribution, we do not understand *how* it is supposed to *follow* from this that only an agreement between the parties or entry of a court order of equitable distribution can give rise to a "right to payment" and, hence, to a "debt" that is potentially subject to discharge in bankruptcy. *Scholl,* 234 B.R. at 642–43.

To begin with, we already have determined that this conclusion does not square with the definition of "claim" set forth at § 101(5)(A) as it bears on the definition of "debt" found at § 101(12) of the Bankruptcy Code. In arriving at this conclusion, which we have determined to be incorrect, *Scholl* points to the principle articulated in *Keystone Savings Association* that, because of the doctrine of *in custodia legis,* a judicial lien creditor of one spouse may not execute on that spouse's interest in marital property until the issue of equitable distribution is resolved. 429 Pa.Super. at 567–68, 633 A.2d at 168.

This would not, in our estimation, prevent a judicial lien holder from having a "claim" in the bankruptcy case against the spouse's bankruptcy estate even though the equitable distribution proceeding is not resolved by the time the bankruptcy case is commenced. If this is so, we can see no good reason why the non-debtor spouse should not also have a "claim" for equitable distribution even though the request also is not resolved by the time the bankruptcy case is resolved.

The final argument in *Scholl* presented in support of the above conclusion is based on what is characterized as "a common sense reading" of § 523(a)(15) of the Bankruptcy Code, which provides in part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt —— ....

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record ... unless ——

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a ... former spouse, or child of the debtor

11 U.S.C. § 523(a)(15).

*Scholl* initially focused on the phrase in § 523(a)(15) referring to a debt that is "incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of court." 234 B.R. at 643. None of

these requirements, the court concluded, was present in *Scholl.* According to the court, debtor therein failed to identify any "debt" he had *incurred* during the course of the divorce or separation. Additionally, there was no separation agreement, divorce decree or other order "evidencing a debt." If there was any "debt," it had "yet to be incurred." *Id.,* 234 B.R. at 643–44.

This analysis is without merit to the extent that it supposedly determines the outcome of the case presently before us. While it is correct to say in our case that there was no separation agreement or order of court evidencing a "debt" for equitable distribution owed by debtor, it is incorrect to say as a result that debtor had not *incurred* a "debt" owed to defendant which was potentially dischargeable.

Contrary to what *Scholl* asserts, it is *not* true that the alleged debt "ha[d] yet to be incurred." It was incurred, albeit without a court order or agreement of the parties, when debtor commenced a divorce action against defendant and defendant responded by counterclaiming for equitable distribution of marital property. Put another way, the first of the three conjuncts found at § 523(a)(15)—*I e.,* a debt that was incurred by the debtor in the course of a divorce proceeding—is satisfied in this case (as well as in *Scholl*).

To bolster this last argument, *Scholl* asserts that it would be "impossible to apply" § 523(a)(15)(A) and (B), *supra,* without there being a prior equitable distribution order of court to evaluate. *Id.,* 234 B.R. at 644. Until it is known how marital assets are to be divided between the debtor spouse and the non-debtor spouse or how much money the former has been ordered to pay the latter, a bankruptcy court can neither apply § 523(a)(15)(A) and determine whether debtor is able to satisfy the award nor apply § 523(a)(15)(B)

and balance the relative harms each spouse would suffer if the debt were enforced. *Id.*, 234 B.R. at 644. From these considerations *Scholl* concluded that "Congress did not have in mind the dischargeability of future equitable distribution awards when it enacted § 523(a)(15)." *Id.*, 234 B.R. at 644.

This argument is not persuasive for various reasons.

The "impossibility" of which *Scholl* speaks *need not occur* where the issue of equitable distribution has yet to be resolved by the time a debtor receives a discharge in bankruptcy, provided that the non-debtor spouse brings a timely adversary action seeking a determination that the resultant debt owed by debtor is excepted from discharge by § 523(a)(15)[1]. Once the equitable distribution issue is resolved in the divorce proceeding, the non-debtor spouse could then request reopening of debtor's bankruptcy case pursuant to § 350(b) of the Bankruptcy Code. At that point it would be possible for the bankruptcy court to apply § 523(a)(15)(A) and (B) to the facts and to finally determine whether or not the debt is discharged. Such a procedure would comport with the requirement that chapter 7 estates be closed "as expeditiously as possible as is compatible with the best interest of parties." U.S.C. § 704(1).

■ To the extent that it would put the bankruptcy court in the "anomalous position" of applying the balancing test found at § 523(a)(15) *right after the state court* (or the bankruptcy court itself) has adjudicated the request for equitable distribution, so be it! A bankruptcy court retains exclusive *jurisdiction to determine whether a debt is dischargeable. See Caton v. Tru-*

*deau (Matter of Caton),* 157 F.3d 1026, 1028 (5th Cir.1998), *cert. denied,* 526 U.S. 1068, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999). While there is some controversy as to whether this is true for each and every one of the fifteen exceptions to the discharge of a debt found at § 523(a), a bankruptcy court at the very least has exclusive jurisdiction to determine the dischargeability of a debt pursuant to § 523(a)(2), (4) and (15). *In re Scott,* 244 B.R. 885, 887 (Bankr.E.D.Mich.1999).

Applying these considerations to the case presently before us, we conclude that this court has exclusive jurisdiction to decide whether the debt at issue in our case is excepted from discharge by virtue of § 523(a)(15) and that we must decide the matter on our own, even if it might appear to some to be "anomalous" for us to do so after another court (or the bankruptcy court itself) has engaged in a similar analysis in applying Pennsylvania law to decide the issue of equitable distribution in the first place.

Finally, before Congress enacted § 523(a)(15), debts for equitable distribution invariably were discharged in bankruptcy. This outcome changed with its enactment. Depending on how the analysis of § 523(a)(15)(A) and (B) played out, such a debt may or may not be excepted from discharge.

Congress unquestionably contemplated that such debts may be exempted from discharge even though they had not been judicially fixed prior to debtor's receipt of a discharge in bankruptcy and while the marital property still is under the jurisdiction of the state court in accordance with the *in custodia legis* doctrine. Had Congress intended to exclude an unresolved request for equitable distribution from the

---

1. It was noted previously that, in contrast to the situation presented in *Scholl*, defendant in this adversary action did not bring a timely adversary action seeking such a determination. She did not participate at all in debtor's bankruptcy case.

scope of the terms "claim" and "debt," we would expect some indication to that effect either in the language of § 523(a)(15) or in its legislative history. Neither gives any such indication.

We conclude in light of the foregoing that defendant had an unliquidated, disputed and unsecured "claim"—i.e., "a right to payment"—for equitable distribution *prior to the commencement of debtor's chapter 7 bankruptcy case.* The resultant pre-petition "debt" owed by debtor was discharged in accordance with § 727(a) of the Bankruptcy Code when defendant did not in accordance with § 523(a)(15) object to its discharge prior to the bar date for so doing. As a consequence, defendant is prohibited by § 524(a)(2) of the Bankruptcy Code from continuing her pursuit of equitable distribution in the parties' ongoing divorce action in state court.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** at Pittsburgh this _____ day of _____, 2003, in accordance with the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that **JUDGMENT** be and hereby is entered **IN FAVOR OF** plaintiff/debtor Ronald L. Schorr and **AGAINST** defendant Deborah L. Schorr.

The debt for equitable distribution owed by debtor to defendant was **DISCHARGED** in debtor's bankruptcy case. Defendant consequently is **PROHIBITED** from further pursuing equitable distribution of marital property in the divorce proceeding between debtor and defendant.

It is **SO ORDERED.**