In re Thomas James VERNER, Debtor.

Thomas James Verner, Plaintiff,

v.

Beverly Verner, Defendant.

Bankruptcy No. 02–28206–MBM.
Adversary No. 04–2460–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 6, 2005.

Mary Bower Sheats, Pittsburgh, PA, for Thomas James Verner.

Candice L. Komar, Brian C. Vertz, Pollock, Begg, Komar, Glasser LLC, Pittsburgh, PA, for Beverly Verner.

## *MEMORANDUM OPINION*

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

Thomas James Verner, the above-captioned debtor and instant plaintiff (hereafter "the Debtor"), brings the instant adversary action against Beverly Verner, the instant defendant and the Debtor's ex-spouse (hereafter "Mrs. Verner"), to (a) enforce the discharge injunction imposed by virtue of the entry of his Chapter 7 discharge and pursuant to 11 U.S.C. § 524(a)(2), which discharge injunction the Debtor contends has been, and continues to be, violated by Mrs. Verner's continued pursuit, subsequent to the entry of the Debtor's Chapter 7 discharge, of her right that accrued pre-petition to equitable distribution against the Debtor in the Pennsylvania Court of Common Pleas for Washington County (hereafter "the State Court"), and (b) obtain a declaration to the effect that (i) such equitable distribution right constitutes a pre-petition claim that has been discharged, and (ii) Mrs. Verner is henceforth enjoined from pursuing such equitable distribution right.

Mrs. Verner defends by raising several arguments, the most compelling of which may be restated as follows, to wit that (a) her right to equitable distribution, which right she represents to this Court she will henceforth pursue only as the same pertains to a 401(k) retirement plan and an ALCOA pension that are presently titled solely in the name of the Debtor (hereafter "the 401(k) Plan," "the ALCOA Plan," and, when referred to collectively, "the Pension Plans"), does not constitute a pre-petition claim against the Debtor, (b) such equitable distribution right consequently has not been discharged by way of the entry of the Debtor's Chapter 7 discharge, and (c) she consequently has not violated, and will not violate in the future, the aforesaid discharge injunction by virtue of her continued pursuit of such equitable distribution right.

For the reasons set forth below, the Court holds that

(a) Mrs. Verner's equitable distribution right, to the extent that she confines her pursuit of the same to a request for an "in kind" division or assignment of the Pension Plans, constitutes a property interest in the Pension Plans even if the same might also constitute a discharged pre-petition claim against the Debtor,

(b) such property interest in the Pension Plans, because it is a property interest, is not susceptible to discharge in bankruptcy but rather may only be avoided via bankruptcy,

(c) such property interest in the Pension Plans has neither thus far been, nor can it any longer be, avoided, which means that such property interest shall survive the Debtor's Chapter 7 discharge,

(d) Mrs. Verner consequently has not violated, and will not violate in the future, the aforesaid discharge injunction by virtue of her continued pursuit of her equitable distribution right to such "in kind" relief, and

(e) Mrs. Verner's equitable distribution right with respect to the Pension Plans, to the extent that the same

could ultimately result in the State Court's establishment of some sort of prospective equalization payment obligation by the Debtor to Mrs. Verner in lieu of, and so as to compensate Mrs. Verner for what she would otherwise obtain via, an "in kind" division or assignment of the Pension Plans, constitutes nothing but a pre-petition claim against the Debtor that has been discharged in bankruptcy, which discharged claim, of course, Mrs. Verner thus may no longer pursue without also violating the § 524(a)(2) discharge injunction.

## STATEMENT OF FACTS

Mrs. Verner commenced an action for divorce against the Debtor on August 29, 2001, in the State Court, wherein Mrs. Verner also requested equitable distribution of the parties' marital property. Included among such marital property are the Pension Plans, which pensions the parties stipulate are "ERISA-qualified plans" that are excluded from the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

The Debtor commenced the instant bankruptcy case on August 1, 2002, or nearly one year subsequent to the date upon which Mrs. Verner requested equitable distribution in the State Court. The State Court neither resolved prior to August 1, 2002, nor has yet resolved Mrs. Verner's request for equitable distribution—in other words, equitable distribution of the parties' marital property remains pending as of the present time.

In the Debtor's Bankruptcy Schedule C, the Debtor indicated that the Pension Plans were excluded from his bankruptcy estate pursuant to § 541(c)(2). However, the Debtor also indicated in his Schedule C that he was alternatively exempting the ALCOA Plan pursuant to 11 U.S.C. § 522(d)(10)(E); the Debtor failed to indicate that he was taking an alternative exemption with respect to the 401(k) Plan. The Court can only presume that the Debtor's purpose in making the aforesaid alternative exemption election with respect to the ALCOA Plan was so as to guard against the possibility that such pension might not be excluded from his bankruptcy estate pursuant to § 541(c)(2). The Debtor included in his Schedule C description of the 401(k) Plan language to the effect that such pension is "subject to equitable distribution claims of his estranged wife, Beverly Verner, in pending divorce proceeding;" such language is conspicuously absent with respect to the Debtor's Schedule C description of the ALCOA Plan. The Debtor, in his Schedule C, valued (a) the 401(k) Plan at $154,969.92, and (b) the ALCOA Plan at a monthly payout of $3,200.37.

Mrs. Verner had notice of, and attended, the Debtor's § 341 meeting of creditors, which meeting was held on October 28, 2002. The bar date for filing a nondischargeability action against the Debtor under 11 U.S.C. § 523(a)(15) was December 27, 2002; Mrs. Verner failed to file such an action by such date and does not presently seek to do so out of time. The Debtor obtained his Chapter 7 discharge on January 17, 2003, and the instant bankruptcy case was closed shortly thereafter.

At a February 2, 2004 hearing in State Court to resolve various issues regarding the parties' divorce and alimony for Mrs. Verner, the Debtor took the position that Mrs. Verner's right for equitable distribution could no longer be pursued, indeed had been effectively discharged, by virtue of the January 17, 2003 entry of the Debtor's Chapter 7 discharge. The February 2, 2004 hearing was ultimately adjourned because Mrs. Verner disputed, and the State Court abstained from resolving,

whether she was now barred by the Debtor's Chapter 7 discharge from continuing to seek equitable distribution. The Debtor subsequently moved to reopen the instant bankruptcy case so that the instant adversary action could be brought, which motion was granted by the Court.

On September 21, 2004, the Court entered a consent order which provides that, in lieu of a trial, the parties will stipulate to the pertinent facts and the issues to be decided by the Court within the context of the instant adversary proceeding. Having now received such stipulation from the parties, the Court proceeds to resolve the matter as set forth below.

## DISCUSSION

The Debtor argues that Mrs. Verner's equitable distribution right constitutes a pre-petition claim that, because it has not been, and now can no longer be, declared nondischargeable pursuant to § 523(a)(15), was discharged upon entry of the Debtor's Chapter 7 discharge, thereby precluding Mrs. Verner from continuing to seek equitable distribution, even with respect to the Pension Plans which are excluded from the Debtor's bankruptcy estate pursuant to § 541(c)(2). A necessary predicate of the Debtor's position is that, because such equitable distribution right constitutes a discharged claim, the same cannot also constitute an unavoided and unavoidable property interest that would survive entry of the Debtor's Chapter 7 discharge, even with respect to the Pension Plans. As support for the Debtor's position, the Debtor relies heavily, indeed relies entirely, upon the decision in *In re Schorr*, 299 B.R. 97 (Bankr.W.D.Pa.2003), which reliance is not at all surprising given that the Debtor's counsel (a) also represented the debtor in *Schorr*, and (b) successfully obtained for such debtor in *Schorr* a decision therein to the effect that such debtor's ex-

wife was precluded from pursuing her right to equitable distribution, which right had accrued pre-petition, on the ground that the same constituted a pre-petition claim that had been discharged by virtue of the entry of such debtor's Chapter 7 discharge, *see Schorr*, 299 B.R. at 98 & 107.

Mrs. Verner counters with multiple arguments, the most compelling of which is that her equitable distribution right, confined as it now is solely to the Pension Plans, has not been discharged by virtue of the entry of the Debtor's Chapter 7 discharge because (a) only pre-petition claims can be so discharged, and (b) such equitable distribution right constitutes neither a pre-petition claim nor, for that matter, a claim at all. Because Mrs. Verner argues that her equitable distribution right with respect to the Pension Plans does not constitute a claim, she necessarily argues that the same constitutes some sort of a property interest, which property interest, since she also argues that it survives the Debtor's bankruptcy discharge, she must also argue has neither been, nor may be, avoided in bankruptcy. As support for such position, Mrs. Verner relies heavily upon the decision in *In re Scholl*, 234 B.R. 636 (Bankr.E.D.Pa.1999), wherein it was held that (a) a right to equitable distribution that accrues prior to the advent of a debtor ex-spouse's bankruptcy (hereafter referred to for convenience as a "pre-petition equitable distribution right") constitutes not a pre-petition claim against such ex-spouse but rather a property interest in marital property, which marital property, to the extent that it is titled only in such ex-spouse's name, constitutes property of such ex-spouse's bankruptcy estate, *see Scholl*, 234 B.R. at 641 (citing court's prior decision in *In re Bennett*, 175 B.R. 181, 183 (Bankr.E.D.Pa.1994)), (b) such property interest, which, of course, cannot be discharged, may also not be avoided in bank-

ruptcy because the marital property that is subject to such property interest is held *in custodia legis* as of the bankruptcy petition filing date, *see Id.* at 639 (citing *Bennett*, 175 B.R. at 185–187), and (c) a non-debtor ex-spouse is thus not precluded from pursuing a pre-petition equitable distribution right against a debtor ex-spouse subsequent to the entry of such latter ex-spouse's Chapter 7 discharge, *see Id.* at 645.[1]

Mrs. Verner also argues

(a) essentially that even if her equitable distribution right with respect to the Pension Plans constitutes a discharged pre-petition claim, and that even if such right does not constitute an unavoided and unavoidable property interest in the Pension Plans, such right nevertheless should survive the Debtor's Chapter 7 discharge so as to prevent "a direct

conflict between ERISA and the Bankruptcy Code;"[2]

(b) that the Debtor is equitably estopped from denying the post-discharge viability of her equitable distribution right with respect to the Pension Plans given that (i) the Debtor indicated in his Schedule C that such pensions were "subject to [Mrs. Verner's] equitable distribution claims," and (ii) she reasonably relied upon such language to her detriment;

(c) that the instant matter is distinguishable from *Schorr* on the basis of the marital property that she seeks to subject to equitable distribution—i.e., only the Pension Plans, which marital property, via § 541(c)(2), is excluded from, and thus does not constitute property of, the Debtor's bankruptcy estate—in contrast to the marital property that

---

1. The Court attributes to Mrs. Verner the position as set forth in the text that precedes the instant footnote because (a) it is consistent both with much of what Mrs. Verner argues in her brief and with several of the legal issues that she raises in the parties' stipulation of facts and issues, and (b) such position constitutes the essence of the decision in *Scholl,* upon which decision Mrs. Verner heavily relies herein. Certain of the language utilized by Mrs. Verner in both her brief and the aforesaid stipulation—and, in particular, Mrs. Verner's loose usage of the word "claim," which word is a term of art specially defined in the Bankruptcy Code—leads the Court, however, to ponder whether Mrs. Verner also argues (a) that, as a matter of law, a debtor's Chapter 7 discharge does not operate to discharge pre-petition claims against such debtor to the extent that claimants would then seek to satisfy such claims from property that is excluded from such debtor's bankruptcy estate pursuant to § 541(c)(2), and (b) that her pre-petition equitable distribution right is thus not discharged by virtue of the Debtor's Chapter 7 discharge even if such right constitutes nothing more than a pre-petition claim given that she has henceforth confined her

pursuit of such right to property that is excluded from the Debtor's bankruptcy estate. The Court holds that, to the extent that Mrs. Verner argues in the manner just set forth in the preceding sentence herein, Mrs. Verner manifestly cannot prevail. The Court so holds because, as a matter of law, a debtor's Chapter 7 discharge, absent a finding of nondischargeability, operates to discharge all pre-petition claims and to enjoin post-discharge collection of the same regardless of the nature of the property from which claimants might ultimately seek to satisfy such claims. *See* 11 U.S.C.A. §§ 727(b) (West 1993) & 524(a)(2) (West 1993).

2. The Court restates this particular argument by Mrs. Verner as it does because, if Mrs. Verner's equitable distribution right with respect to the Pension Plans either does not constitute a discharged pre-petition claim or constitutes an unavoided and unavoidable property interest in the Pension Plans, then (a) such equitable distribution right is preserved in any event, and (b) such argument by Mrs. Verner would add nothing to the other arguments that she has made.

was sought to be subjected to equitable distribution by the nondebtor ex-spouse in *Schorr*—i.e., marital property that was apparently reachable by the *Schorr* debtor's creditor body; and

(d) that *Schorr*, which was decided nearly nine months after the bar date had passed in the instant case for filing a nondischargeability action against the Debtor under 11 U.S.C. § 523(a)(15), should not be retroactively applied in the instant matter given that *Schorr* is inconsistent with *Scholl*, which latter decision, argues Mrs. Verner, constituted the state of the law prior to *Schorr*.

The Debtor, as one would expect, disagrees with each of the foregoing arguments. The Debtor also attempts to distinguish *Scholl* from the instant matter on the ground that, in contrast to Mrs. Verner, the nondebtor ex-spouse in *Scholl* timely filed an adversary proceeding seeking, *inter alia*, a determination that such ex-spouse's equitable distribution right was nondischargeable under § 523(a)(15).

■ The Court can dispose of most of the parties' foregoing arguments in relatively short order. First, the Court must reject Mrs. Verner's position that, even if her equitable distribution right vis-a-vis the Pension Plans constitutes a discharged pre-petition claim, and even if such right does not constitute an unavoided and unavoidable property interest in the Pension Plans, such right nevertheless should survive the Debtor's Chapter 7 discharge so as to prevent a conflict between ERISA and the Bankruptcy Code. The Court so rules because (a) ERISA only protects an ex-spouse upon divorce vis-a-vis a pension plan interest of the other ex-spouse if the first ex-spouse has obtained a qualified domestic relations order (hereafter "QDRO"), *see* 29 U.S.C.A. § 1056(d)(3)

(West 1999), (b) a conflict between ERISA and the Bankruptcy Code such as that described by Mrs. Verner thus could only arise if Mrs. Verner possessed or had the right to obtain a QDRO that the Bankruptcy Code somehow enabled the Debtor to defeat, (c) the requisite condition for the existence of such a conflict, that is that Mrs. Verner has a QDRO or has the right to obtain one, can only be satisfied if Mrs. Verner were able to obtain a QDRO given that she presently does not possess a QDRO, and (d) Mrs. Verner will not be able to obtain a QDRO if her equitable distribution right vis-a-vis the Pension Plans (i) constitutes a discharged pre-petition claim, and (ii) does not constitute an unavoided and unavoidable property interest in such pensions—the last conclusion follows because such circumstances would operate to preclude Mrs. Verner from continuing her pursuit of equitable distribution in the State Court, *see infra* p. 786 (pre-petition equitable distribution right that constitutes nothing but a discharged pre-petition claim does not survive bankruptcy), which court is the only one which can bestow a QDRO upon her, *see* 29 U.S.C.A. § 1056(d)(3)(B)(ii)(II).

■ Second, the Court rejects Mrs. Verner's equitable estoppel argument. Mrs. Verner essentially argues that, because the Debtor represented in his Schedule C that the Pension Plans were "subject to [Mrs. Verner's] equitable distribution claims," he should now be estopped from arguing what she contends is the exact opposite, namely that such equitable distribution claims have been discharged. To complete the argument, Mrs. Verner asserts that she reasonably relied upon such language in Schedule C to her detriment; the Court presumes that the detriment so asserted is that, had Mrs. Verner been aware that the Debtor would take the position that her equitable distri-

bution claims were discharged by way of his Chapter 7 discharge, then Mrs. Verner would have acted to timely file a § 523(a)(15) nondischargeability action. "Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken." *Blofsen v. Cutaiar,* 460 Pa. 411, 333 A.2d 841, 843 (1975). "The two essential elements of equitable estoppel are inducement [by one party] and justifiable reliance on that inducement [by the other party]." *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502, 503 (1983); *see also Zitelli v. Dermatology Education and Research Foundation,* 534 Pa. 360, 633 A.2d 134, 139 (1993) (citing *Novelty Knitting*). The Court must rule as it does, that is reject such equitable estoppel argument, because the Court concludes that the Debtor, by presently arguing that Mrs. Verner's equitable distribution claims vis-a-vis the Pension Plans have now been discharged, does not now take a position that is at odds with the Debtor's representation in his Schedule C that such pensions were subject to such claims.[3] The Court so holds because that the Pension Plans were subject to such claims of Mrs. Verner at the time of bankruptcy means neither that such claims necessarily could not be subsequently discharged or avoided via the bankruptcy process nor that the Debtor would not subsequently attempt to so discharge or avoid such claims. Put differently, the Court holds that the Debtor, by virtue of the relevant language that he included in his Schedule C, did not induce Mrs. Verner to believe that he would not ultimately argue that her equitable distri-

bution claims vis-a-vis the Pension Plans had been discharged through his bankruptcy. Of course, without the presence of such inducement, Mrs. Verner's equitable estoppel argument fails.

Third, the Court cannot, as Mrs. Verner proposes, distinguish *Schorr* from the instant matter simply on the basis that, in contrast to the marital property that the nondebtor ex-spouse in *Schorr* sought to subject to equitable distribution, Mrs. Verner only seeks equitable distribution with respect to marital property that is excluded from a debtor's bankruptcy estate via § 541(c)(2). The Court agrees with Mrs. Verner that such distinction is relevant to the proffered concern of the *Schorr* court, as set forth in such decision, that, unless it analyzed a pre-petition equitable distribution right as it did, that is that such equitable distribution right constitutes nothing more than a pre-petition claim that is discharged via bankruptcy absent a subsequent nondischargeability determination, then a debtor would be able to abusively collude with his or her nondebtor ex-spouse and wrongfully deprive the balance of such debtor's creditors of a distribution in bankruptcy, *see Schorr,* 299 B.R. at 100 & 103—indeed, such concern is entirely abated with respect to property that is so excluded from a debtor's bankruptcy estate because such property would never be distributed to such creditors in any event. However, because of the analytical framework that is utilized by the *Schorr* court, this Court cannot envision how such court could, and thus concludes that such court would not, have altered its decision therein had excluded property been the only marital property that the *Schorr* nondebtor ex-

---

3. The Court also notes that the Debtor actually represented in his Schedule C only that the 401(k) Plan was "subject to [Mrs. Verner's] equitable distribution claims;" such language is conspicuously absent with respect to the Debtor's Schedule C description of the AL-

COA Plan. Therefore, Mrs. Verner's equitable estoppel argument, based as it is entirely on the representation made by the Debtor in his Schedule C, necessarily fails with respect to the ALCOA Plan.

spouse sought to subject to equitable distribution. In light of the foregoing, this Court believes that to distinguish *Schorr* from the instant matter on such a basis would be inappropriate if not disingenuous.

Fourth, the Court views as a nonissue whether the retroactive application of *Schorr* to the instant matter is appropriate given that such decision, since it is but a decision of another bankruptcy court, is not controlling on this Court's decision in the instant matter in any event; indeed, because *Schorr* is not binding on this Court, this Court is free to agree or disagree at this time with *Schorr*. At the same time, however, the Court points out that *Scholl*, because it is also a decision of another bankruptcy court, did not constitute the state of binding authority prior to *Schorr*; therefore, as with *Schorr*, this Court is presently free to agree or disagree with *Scholl*.

Finally, the Court disagrees with the Debtor that *Scholl* can be successfully distinguished from the instant matter on the ground that, in contrast to Mrs. Verner, the nondebtor ex-spouse in *Scholl* timely filed an adversary proceeding seeking, *inter alia*, a determination that such ex-spouse's pre-petition equitable distribution right was nondischargeable under § 523(a)(15). The Court so holds because the *Scholl* court, since it held that a pre-petition equitable distribution right constitutes an unavoidable property interest rather than a claim that can be subjected to discharge via bankruptcy, *see supra* p. 782, concluded as well that there was no need by the nondebtor ex-spouse therein to timely file a nondischargeability action under § 523(a)(15) in order to preserve such property interest, *see Scholl*, 234 B.R. at 637 n. 1 (after holding that the nondebtor ex-spouse's pre-petition equitable distribution right does not constitute a claim subject to bankruptcy discharge, the court

then held that such ex-spouse's "alternative theory, i.e., that if she has a claim, it would be nondischargeable under Section 523(a)(15), need not be addressed") & 234 B.R. at 640 n. 6 (noting that since a nondebtor ex-spouse's "interest is not a claim, § 523(a)(15) which deals with the dischargeability of a debt ... is not implicated"). Of course, since the *Scholl* court held that a nondebtor ex-spouse need not timely file a § 523(a)(15) nondischargeability action in order to preserve a pre-petition equitable distribution right, that the *Scholl* nondebtor ex-spouse nevertheless timely filed such an action (a) was irrelevant to the *Scholl* court's decision, and (b) is thus not a basis for successfully distinguishing *Scholl* from the instant matter. The Court also suspects that the Debtor, as authority for its position that *Scholl* is distinguishable from the instant matter on the basis just set forth, relies on a passage in *Schorr*, wherein the *Schorr* court acknowledged the same point of difference between the nondebtor ex-spouse therein and the *Scholl* nondebtor ex-spouse, i.e., that the *Schorr* nondebtor ex-spouse had failed to file a § 523(a)(15) action. *See Schorr*, 299 B.R. at 106 n. 1. However, this Court notes importantly that the *Schorr* court did not attempt to distinguish its case from *Scholl* on the basis of such difference; instead, the *Schorr* court chose to disagree completely with the holding in *Scholl*, after which the *Schorr* court noted, more as an aside, the existence of the aforesaid factual difference between its case and *Scholl*.

Having so disposed of all of the foregoing issues but one, the Court can now proceed to resolve the lone remaining issue, namely whether Mrs. Verner's pre-petition equitable distribution right vis-a-vis the Pension Plans constitutes nothing more than a pre-petition claim that has been discharged in bankruptcy or whether, instead, such right constitutes an unavoid-

ed and unavoidable property interest in marital property that passed through the Debtor's bankruptcy. If such pre-petition equitable distribution right constitutes nothing more than a discharged pre-petition claim, then such right is no longer viable and subject to pursuit by Mrs. Verner in the State Court. However, if such equitable distribution right constitutes an unavoided and unavoidable property interest in marital property that passed through the Debtor's bankruptcy, then such right is unaffected by the Debtor's Chapter 7 discharge and remains viable at this time.

### I. Whether Mrs. Verner's pre-petition equitable distribution right constitutes a pre-petition claim, a property interest, or both?

 At the outset, the Court identifies a legal issue that seems to have escaped not only the parties in the instant matter but perhaps most, if not all, of those courts as well that have had the pleasure of wrestling with the intersection of bankruptcy and pre-petition equitable distribution rights, namely whether pre-petition equitable distribution rights constitute not only pre-petition claims within the meaning of the Bankruptcy Code but also property interests in marital property, which (a) property interests are perhaps avoidable in bankruptcy or not, and (b) marital property, in turn, constitutes property of a debtor ex-spouse's bankruptcy estate. The Court notes that neither the *Schorr* nor the *Scholl* courts addressed the issue just propounded by the Court. Such issue was also not addressed in either *Bennett,* upon which the *Scholl* court heavily relies, or *In re Polliard,* 152 B.R. 51 (Bankr.W.D.Pa.1993), upon which the *Schorr* court heavily relies. The *Schorr* and *Polliard* courts appear, at least by

necessary implication, to have simply presumed that if a pre-petition equitable distribution right constitutes a pre-petition claim, then the same cannot constitute a property interest that, absent avoidance in bankruptcy, passes through bankruptcy like a lien. The *Scholl* and *Bennett* courts, on the other hand, did not need to address the issue just raised by the Court because both affirmatively concluded that a pre-petition equitable distribution right constitutes only a property interest and not a pre-petition claim. In light of the significantly differing analyses contained in *Schorr, Scholl, Bennett,* and *Polliard,* how shall this Court rule on the bankruptcy categorization of a pre-petition equitable distribution right and, in particular, on Mrs. Verner's pre-petition equitable distribution right, that is whether the same constitute a pre-petition claim, a property interest, or both? Furthermore, does such categorization depend in any way upon whether the marital property that is sought to be subjected to equitable distribution is excluded from a debtor's bankruptcy estate pursuant to § 541(c)(2)?

██ ██ To the extent that equitable distribution can yield an "in kind" division or assignment of marital property (hereafter "in kind relief"), this Court is inclined to hold, as a matter of law, that a pre-petition equitable distribution right constitutes both a pre-petition claim and a property interest. The Court utilizes the word "inclined" in the previous sentence because the Court

(a) holds, consistent with *Scholl* and *Bennett* but perhaps contrary to *Schorr* and *Polliard,* that a pre-petition equitable distribution right constitutes a property interest to the extent that such right can yield in kind relief,[4] the nature of which in-

---

**4.** To be clear, the *Scholl* and *Bennett* courts

held that pre-petition equitable distribution

terest is stated to be "the right to secure a [state] court order determining the extent of . . . [an ex-spouse's] interest in" marital property, *Bennett*, 175 B.R. at 183; *Scholl*, 234 B.R. at 639 (citing *Bennett*),

(b) observes that it frankly matters little whether such property interest also constitutes a pre-petition claim, which claim may have been discharged in bankruptcy, as long as such property interest cannot be avoided in bankruptcy,

(c) holds, as set forth below, that Mrs. Verner's property interest that is her pre-petition equitable distribution right to in kind relief has neither thus far been, nor can it any longer be, avoided, *see infra* pp. 790–92, and

(d) thus need not really resolve, that is it becomes academic, in the instant matter whether Mrs. Verner's property interest that is her pre-petition equitable distribution right to in kind relief also constitutes a pre-petition claim—such pre-petition equitable distribution right to in kind relief survives bankruptcy as an unavoided property interest regardless of whether the same constitutes a discharged pre-petition claim.

So as to complete the analysis, however, the Court is inclined to hold, consistent with *Polliard* and *Schorr* but in stark contrast to *Scholl* and *Bennett*, that a pre-petition equitable distribution right to in kind relief constitutes a pre-petition claim[5] because

(a) a " 'claim' means . . . right to payment," 11 U.S.C.A. § 101(5)(A) (West 1993),

(b) "a 'right to payment' . . . 'is nothing more nor less than an enforceable obligation,' " *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (U.S.1998),

(c) a state court's in kind division or assignment to a nondebtor ex-spouse of marital property that is titled solely in the name of a debtor ex-spouse will typically result (i) in the imposition of an enforceable obligation upon such debtor ex-spouse to transfer title to such property, and (ii) thereby in the creation of a claim in favor of such nondebtor ex-spouse, and

(d) such enforceable obligation (and thus claim) as just described accrues pre-petition notwithstanding that, as of the date upon which a debtor ex-spouse commences bankruptcy, such enforceable obligation (and thus claim) has yet to be reduced to judgment, is unliquidated, and is arguably contingent and disputed in nature, *see Schorr*, 299 B.R. at 102–103 (rejecting, as this Court does, the

---

rights constitute property interests regardless of the type of relief that is thereby sought or obtained, that is such courts—unlike this Court herein—did not, with respect to the issue of whether pre-petition equitable distribution rights constitute property interests, dichotomize between such rights on the basis of the type of relief that is thereby sought or obtained.

**5.** To be clear once again, the courts in *Polliard, Schorr, Scholl,* and *Bennett* did not, with respect to the issue of whether pre-petition equitable distribution rights constitute pre-petition claims, dichotomize—as does this Court herein—between such rights on the basis of the type of relief that is thereby sought or obtained, that is the courts in *Polliard* and *Schorr* held that a pre-petition equitable distribution right constitutes a pre-petition claim regardless of the type of relief that is thereby sought or obtained, whereas the courts in *Scholl* and *Bennett* held otherwise regardless of the type of relief that is thereby sought or obtained.

contrary holding in *Scholl* as to when enforceable obligations that stem from a pre-petition equitable distribution right arise, and citing to language in § 101(5)(A) to support its holding that such enforceable obligations arise pre-petition).

Furthermore, it is not anomalous in bankruptcy for a right to constitute both a pre-petition claim and a property interest. *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 2153–2155, 115 L.Ed.2d 66 (1991) (holding that a mortgage upon realty owned by a debtor, which mortgage is unquestionably a property interest, also constitutes a pre-petition claim under § 101(5), and noting as well that such holding is consistent with 11 U.S.C. § 102(2) because a mortgagee, who after bankruptcy "has a claim enforceable only against the debtor's property[,] nonetheless [thereby] has a 'claim against the debtor' for purposes of the Code"). Therefore, to the extent that the courts in *Schorr* and *Polliard* held—and it seems that they must have by necessary implication—that, because a pre-petition equitable distribution right constitutes a pre-petition claim, the same cannot constitute a property interest, this Court respectfully disagrees with them. In light of the foregoing, the Court holds, as a matter of law, that a pre-petition equitable distribution right to in kind relief constitutes a property interest and, most likely, a pre-petition claim.

On the other hand, to the extent that equitable distribution can result in the establishment of some sort of prospective equalization payment obligation by a debtor ex-spouse to a nondebtor ex-spouse in lieu, and so as to compensate such nondebtor ex-spouse for what such spouse would otherwise obtain in the form, of in kind relief (hereafter "equalization relief"), the Court holds, as a matter of law, that a pre-petition equitable distribution right constitutes nothing more than a pre-petition claim, that is such right does not constitute a property interest. The Court holds that a pre-petition equitable distribution right to equalization relief constitutes a pre-petition claim for precisely the same reason that the Court, as set forth in the preceding paragraph above, was inclined to conclude that a pre-petition equitable distribution right to in kind relief constitutes a pre-petition claim. The Court so holds because the Court concludes, in turn, that the analysis that the Court undertook above when it ascertained that a pre-petition equitable distribution right to in kind relief most likely constitutes a pre-petition claim is unaffected by the nature of the relief sought or obtained via a pre-petition equitable distribution right—i.e., a state court's imposition of an equalization payment obligation upon a debtor constitutes no less an enforceable obligation than one imposed by way of in kind division or assignment of marital property, and both types of enforceable obligations accrue at the same time. However, the Court holds that a pre-petition equitable distribution right to equalization relief does not constitute a property interest, and thus may thereby be distinguished from a pre-petition equitable distribution right to in kind relief, because, whereas the latter is necessarily satisfied out of, and thus constitutes a property interest in, marital property, the former is not satisfied out of, and thus cannot constitute a property interest in, marital property—instead, the former will be satisfied out of property that either no longer constitutes, or never constituted, marital property. The Court notes that its holding regarding the dichotomy that exists between in kind relief and equalization relief vis-a-vis the classification of a pre-petition equitable distribution right is not all that novel since at least one other court has also found such a dichotomy to exist, *see In re Emelity*, 251 B.R. 151, 154–157

(Bankr.S.D.Cal.2000), although such court's analysis differs from this Court's in other regards, *see Id.* (holding that a pre-petition equitable distribution right to equalization relief constitutes a discharged pre-petition claim, and distinguishing while agreeing with *In re Marriage of Seligman,* 14 Cal.App.4th 300, 18 Cal.Rptr.2d 209, 214–215 (1993), wherein it was held that a pre-petition equitable distribution right to in kind relief does not constitute a pre-petition claim). Also, so as to compare this Court's decision solely regarding the classification of a pre-petition equitable distribution right to equalization relief with that in *Schorr, Scholl, Bennett,* and *Polliard,*[6] the Court finds that (a) it is apparently aligned completely with *Schorr* and *Polliard,* that is the courts in *Schorr* and *Polliard* would appear to hold, as does this Court, that such a pre-petition equitable distribution right constitutes nothing more than a pre-petition claim, and (b) it disagrees completely with *Scholl* and *Bennett,* which latter decisions stand for the proposition that such a pre-petition equitable distribution right constitutes nothing more than a property interest. In light of the foregoing, the Court holds, as a matter of law, that a pre-petition equitable distribution right to equalization relief constitutes nothing more than a pre-petition claim, that is such right does not constitute a property interest.

Applying the Court's foregoing statements of law to Mrs. Verner's pre-petition equitable distribution right, the Court holds that

(a) Mrs. Verner's pre-petition equitable distribution right to in kind relief constitutes a property interest and,

most likely, a pre-petition claim as well;

(b) Mrs. Verner's pre-petition equitable distribution right to equalization relief constitutes nothing but a pre-petition claim;

(c) Mrs. Verner's pre-petition equitable distribution right to in kind relief survives the Debtor's bankruptcy (i) as a property interest provided that such interest has neither been nor may be avoided in bankruptcy, and (ii) notwithstanding that such right also probably constitutes a pre-petition claim that has been discharged as a result of the Debtor's Chapter 7 discharge given that Mrs. Verner failed to timely seek the nondischargeability of such pre-petition claim under § 523(a)(15); and

(d) Mrs. Verner's pre-petition equitable distribution right to equalization relief does not survive the Debtor's bankruptcy given that such right constitutes nothing but a pre-petition claim, which pre-petition claim has been discharged via the combination of the Debtor's Chapter 7 discharge and Mrs. Verner's failure to timely seek the nondischargeability of such pre-petition claim under § 523(a)(15).

Furthermore, the Court rules, as a matter of law, that the foregoing analysis is not affected by, that is it matters not to the resolution of the issue whether a nondebtor ex-spouse's pre-petition equitable distribution right constitutes a pre-petition claim, a property interest, or both, whether the marital property that is sought to be subjected to equitable distribution is excluded from a debtor's bankruptcy es-

---

**6.** To be clear yet again, the courts in *Polliard, Schorr, Scholl,* and *Bennett* did not, with respect to the issue of whether pre-petition equitable distribution rights constitute pre-petition claims and/or property interests, dichotomize—as does this Court herein—between such rights on the basis of the relief that is thereby sought or obtained.

tate pursuant to § 541(c)(2). Therefore, it matters not to the issue of whether Mrs. Verner's pre-petition equitable distribution right constitutes a pre-petition claim, a property interest, or both that she has agreed to henceforth confine the pursuit of such right to excludable property in the form of the Pension Plans. However, and as will be explained below, that Mrs. Verner confines the pursuit of her pre-petition equitable distribution right to excludable property becomes significant to a resolution of the next issue that the Court must face, namely whether Mrs. Verner's property interest that is her pre-petition equitable distribution right to in kind relief may be avoided in bankruptcy, *see infra* pp. 791–92.

**II. *Whether Mrs. Verner's property interest in the form of her pre-petition equitable distribution right to in kind relief may be avoided in bankruptcy?***

Mrs. Verner's property interest in the form of her pre-petition equitable distribution right to in kind relief (hereafter "Mrs. Verner's property interest") has not yet been avoided during the course of the Debtor's bankruptcy case. May such property interest be avoided now and, if so, under what provision of the Bankruptcy Code may such avoidance be effected?

The courts in *Scholl* and *Bennett* would presumably conclude that Mrs. Verner's property interest may not be avoided because such courts held, as a matter of law, that a property interest in the form of a pre-petition equitable distribution right is immune to avoidance by a bankruptcy trustee pursuant to 11 U.S.C. § 544(a). *See Bennett,* 175 B.R. at 186–187; *Scholl,* 234 B.R. at 639 (citing *Bennett*). The *Scholl* and *Bennett* courts so held because they held, in turn, that (a) the marital property that is subject to such property interest, as a matter of law, is held *in*

*custodia legis* by at least the date upon which a debtor ex-spouse files for bankruptcy, *see Bennett,* 175 B.R. at 185–187; *Scholl,* 234 B.R. at 639 (citing *Bennett*), and (b) such property interest is thus superior to the hypothetical lien, that is the strong arm power, provided to a bankruptcy trustee under § 544(a), *see Bennett,* 175 B.R. at 187; *Scholl,* 234 B.R. at 639 (citing *Bennett*). The *Schorr* and *Polliard* courts, on the other hand, because neither concluded that a pre-petition equitable distribution right constitutes a property interest, had no reason to address whether such right can be avoided by a bankruptcy trustee pursuant to § 544(a). However, the *Schorr* and *Polliard* courts, within the context of whether a pre-petition equitable distribution right constitutes a pre-petition claim, openly questioned whether, that is were skeptical that, marital property that is subject to a pre-petition equitable distribution right is held *in custodia legis. See Schorr,* 299 B.R. at 104; *Polliard,* 152 B.R. at 54. Consequently, if they had been faced with the issue, the Court would expect that the *Schorr* and *Polliard* courts would have also questioned whether, and very well might have disagreed with the decisions in *Scholl* and *Bennett* that, a pre-petition equitable distribution right is immune to avoidance by a bankruptcy trustee under § 544(a). In light of the divergence of views between *Schorr* and *Polliard,* on the one hand, and *Scholl* and *Bennett,* on the other hand, which way should the Court rule regarding whether Mrs. Verner's property interest may now be avoided and, in particular, pursuant to § 544(a)? Fortunately for the Court, it concludes that it may ultimately resolve the instant matter without needing to choose between the divergent viewpoints espoused in *Schorr* and *Polliard,* on the one hand, and *Scholl* and *Bennett,* on the other hand. The Court concludes as it

does because the Court holds, for several reasons as set forth below, that, even if, as a matter of law, marital property that is subject to a pre-petition equitable distribution right to in kind relief is not held *in custodia legis* so that a bankruptcy trustee may generally avoid a property interest in the form of such right via § 544(a), neither a bankruptcy trustee in the instant case via § 544(a) nor the Debtor himself via § 544(a) and 11 U.S.C. § 522(h) could henceforth avoid Mrs. Verner's property interest.

 First, even if, for the sake of argument, a bankruptcy trustee were to be appointed in the instant case—and one has yet to be appointed subsequent to the reopening of the instant case—who then might identify some incentive for now pursuing an avoidance action under § 544(a) vis-a-vis Mrs. Verner's property interest, such bankruptcy trustee could no longer pursue such an avoidance action given that the limitations period for pursuing such an avoidance action, as provided by 11 U.S.C. § 546(a)(1), passed on August 1, 2004 (i.e., 2 years after the August 1, 2002 entry of the order for relief in the instant case). Second, because a bankruptcy trustee would be barred by the passage of the § 546(a)(1) limitations period from avoiding Mrs. Verner's property interest via § 544(a), the Debtor would now be precluded from attempting himself to so avoid Mrs. Verner's property interest via § 522(h). *See* 11 U.S.C.A. § 522(h)(1) (West 1993) (a debtor may only avoid an interest via § 544(a) by virtue of § 522(h) "if … such … [interest] is avoidable by

the trustee under section 544"); *see also* 4 *Collier on Bankruptcy* ¶ 522.12[3][a] at 522–102 (Bender 2004) (§ 522(h) would only empower the Debtor to utilize § 544(a) to the same limited extent that such provision could be utilized by a bankruptcy trustee because "[t]he debtor has only the same rights as the trustee under … [§ 544(a)]"). Third, assuming *arguendo* that the passage of the § 546(a)(1) limitations period, as a matter of law, would not operate by itself to now preclude the Debtor from utilizing § 522(h) to avoid Mrs. Verner's property interest himself, the Debtor would nevertheless be precluded henceforth from utilizing § 522(h) to avoid Mrs. Verner's property interest to the extent that such property interest extends, in particular, to the Pension Plans because (a) a debtor, as a matter of law, may utilize § 522(h) to avoid an interest in property only "to the extent that the debtor could have exempted such property" under, ultimately, 11 U.S.C. § 522(b), *see* 11 U.S.C.A. § 522(h) (provision references § 522(g)(1), which provision, in turn, references § 522(b)), (b) the only property that a debtor may exempt under § 522(b), as a matter of law, is property of such debtor's bankruptcy estate, *see* 11 U.S.C.A. § 522(b) (West 1993 & Supp.2004), (c) the Pension Plans—i.e., the only marital property that Mrs. Verner seeks to obtain via Mrs. Verner's property interest—are excluded via § 541(c)(2) from, and thus do not constitute property of, the Debtor's bankruptcy estate, and (d) the Debtor thus could not have exempted the Pension Plans under § 522(b).[7] In light of the

7. As an aside, the Court recognizes, as set forth in its statement of facts, that the Debtor, in his Schedule C, not only took the position that the ALCOA Plan was excluded from his bankruptcy estate via § 541(c)(2) but also attempted to alternatively exempt such pension, presumably so as to guard against the possibility that such pension might not be so ex-

cluded from his bankruptcy estate. Such alternative exemption election is, of course, now ineffectual given that (a) the parties have stipulated, and the Court must thus find, that the ALCOA Plan is excluded from, that is such pension does not constitute property of, the Debtor's bankruptcy estate, (b) the Debtor, as set forth in the text above, may only exempt

foregoing, the Court concludes that, even if, as a matter of law, marital property that is subject to a pre-petition equitable distribution right to in kind relief is not held *in custodia legis* so that a bankruptcy trustee may generally avoid a property interest in the form of such right via § 544(a), neither a bankruptcy trustee in the instant case via § 544(a) nor the Debtor himself via §§ 544(a) and 522(h) could henceforth avoid Mrs. Verner's property interest. Because neither a bankruptcy trustee nor the Debtor himself could so avoid Mrs. Verner's property interest, it, of course, matters not (a) whether a bankruptcy trustee may, as a general matter, avoid via § 544(a) a property interest in the form of a pre-petition equitable distribution right to in kind relief, or consequently (b) whether the marital property that is subject to such interest, as a matter of law, is held *in custodia legis*. As an aside, however, the Court notes that it finds to be persuasive the *in custodia legis* analysis set forth in *Bennett, see Bennett,* 175 B.R. at 185–187, which analysis is followed as well in *Scholl, see Scholl,* 234 B.R. at 639 n. 5; thus, if it were necessary, the Court would be inclined to ultimately agree with *Scholl* and *Bennett* that a property interest in the form of a pre-petition equitable distribution right to in kind relief is, as a matter of law, immune to avoidance by a bankruptcy trustee pursuant to § 544(a).

Because neither a bankruptcy trustee via § 544(a) nor the Debtor himself via §§ 544(a) and 522(h) could henceforth avoid Mrs. Verner's property interest, and since the Court cannot conceive of any other method by which Mrs. Verner's property interest may henceforth be avoided, Mrs. Verner's property interest, that is her pre-petition equitable distribution right to in kind relief, henceforth may not be avoided within the Debtor's bankruptcy.

## III. *The ultimate outcome.*

Because Mrs. Verner's pre-petition equitable distribution right to in kind relief may no longer be avoided within the Debtor's bankruptcy, such right survives and passes through the Debtor's bankruptcy unimpeded just as would an unavoided lien. Consequently, Mrs. Verner may continue to pursue an "in kind" division or assignment of the Pension Plans via equitable distribution in the State Court post-discharge without fear of violating the § 524(a)(2) discharge injunction. However, Mrs. Verner's pre-petition equitable distribution right to equalization relief, as set forth above, does not survive the Debtor's bankruptcy. Mrs. Verner thus may no longer pursue the same without also violating the § 524(a)(2) discharge injunction.

As an aside, the Court observes that, because it need not herein, and thus expressly refuses at this time to, hold that a

property of his bankruptcy estate, (c) the Debtor thus could not now exempt the AL-COA Plan, and (d) whether property is excluded from, or conversely whether property comprises part of, a debtor's bankruptcy estate is not, as a matter of law, an issue that can be subjected to an amendable election by a debtor in the same fashion that a debtor may make amendable elections regarding exemptions that such debtor wishes to take. Because such alternative exemption election is now ineffectual, and since a vehicle does not exist whereby the Debtor could now somehow

transform the ALCOA Plan—or, for that matter, the 401(k) Plan, for which pension the Debtor failed to make a backup exemption election in his Schedule C—into property of his bankruptcy estate so as to either (a) make such alternative exemption election effectual in the future, or (b) allow for a future amended exemption election of the Pension Plans, the Debtor would, as set forth in the text above, be precluded henceforth from avoiding Mrs. Verner's property interest to the extent that the same extends, in particular, to the Pension Plans.

property interest in the form of a pre-petition equitable distribution right to in kind relief is, as a matter of law, immune to avoidance by a bankruptcy trustee pursuant to § 544(a), the Court, by ultimately ruling as it does, does not, as the courts in *Schorr* and *Polliard* were so concerned with, provide a tool for debtors who wish to abusively collude with their nondebtor ex-spouses to wrongfully deprive the balance of such debtors' creditors of a distribution in bankruptcy. The Court leaves to another day and another case the resolution of the legal issue whether a bankruptcy trustee may avoid a pre-petition equitable distribution right to in kind relief via § 544(a) so as to capture for a debtor's creditor body marital property that (a) is titled in such debtor's name only, and (b) would then go to such creditor body via a Chapter 7 distribution.

## CONCLUSION

For all of the foregoing reasons, Mrs. Verner may continue to pursue an "in kind" division or assignment of the Pension Plans via equitable distribution in the State Court post-discharge without fear of violating the § 524(a)(2) discharge injunction. However, Mrs. Verner is, by virtue of the § 524(a)(2) discharge injunction, enjoined from henceforth attempting to obtain via such equitable distribution any sort of equalization relief, that is the imposition of some sort of prospective equalization payment obligation by the Debtor to Mrs. Verner in lieu of, and so as to compensate Mrs. Verner for what she would otherwise obtain via, an "in kind" division or assignment of the Pension Plans.

An appropriate order will be entered.

## ORDER OF COURT

**AND NOW**, this **6th day** of **January, 2005**, upon consideration of the adversary action brought by Thomas James Verner, the above-captioned debtor and instant plaintiff (hereafter "the Debtor"), against Beverly Verner, the instant defendant and the Debtor's ex-spouse (hereafter "Mrs. Verner"), to (a) enforce the discharge injunction imposed by virtue of the entry of his Chapter 7 discharge and pursuant to 11 U.S.C. § 524(a)(2), which discharge injunction the Debtor contends has been, and continues to be, violated by Mrs. Verner's continued pursuit, subsequent to the entry of the Debtor's Chapter 7 discharge, of her right that accrued pre-petition to equitable distribution against the Debtor (hereafter "pre-petition equitable distribution right") in the Pennsylvania Court of Common Pleas for Washington County (hereafter "the State Court"), and (b) obtain a declaration to the effect that (i) such pre-petition equitable distribution right constitutes a pre-petition claim that has been discharged, and (ii) Mrs. Verner is henceforth enjoined from pursuing such pre-petition equitable distribution right;

and given Mrs. Verner's representation to this Court that she will henceforth pursue her pre-petition equitable distribution right only as the same pertains to a 401(k) retirement plan and an ALCOA pension that are presently titled solely in the name of the Debtor (hereafter "the Pension Plans");

and in light of the consent order entered by the Court on September 21, 2004, which order provides that, in lieu of a trial, the parties will stipulate to the pertinent facts and the issues to be decided by the Court within the context of the instant adversary proceeding;

and upon consideration of such stipulation, which has now been received by the Court;

and in accordance with, and for all of the reasons set forth in, the accompanying

Memorandum Opinion of this Court dated **January 6, 2005,**

it is **hereby ORDERED, ADJUDGED, AND DECREED** that

(a) Mrs. Verner's pre-petition equitable distribution right, to the extent that she confines her pursuit of the same to a request for an "in kind" division or assignment of the Pension Plans, constitutes a property interest in the Pension Plans even if the same might also constitute a discharged pre-petition claim against the Debtor,

(b) such property interest in the Pension Plans, because it is a property interest, is not susceptible to discharge in bankruptcy but rather may only be avoided via bankruptcy,

(c) such property interest in the Pension Plans has neither thus far been, nor can it any longer be, avoided, which means that such property interest shall survive the Debtor's Chapter 7 discharge,

(d) Mrs. Verner consequently has not violated, and will not violate in the future, the § 524(a)(2) discharge injunction by virtue of her continued pursuit of her pre-petition equitable distribution right to such "in kind" relief, and

(e) Mrs. Verner's equitable distribution right with respect to the Pension Plans, to the extent that the same could ultimately result in the State Court's establishment of some sort of prospective equalization payment obligation by the Debtor to Mrs. Verner in lieu of, and so as to compensate Mrs. Verner for what she would otherwise obtain via, an "in kind" division or assignment of the Pension Plans, constitutes nothing more than a pre-petition claim against the Debtor that has been discharged in bankruptcy, which discharged claim, by virtue of the § 524(a)(2) discharge injunction, Mrs. Verner is thus henceforth enjoined from continuing to pursue post-discharge.

**IN SUMMARY**, Mrs. Verner (a) may continue to pursue an "in kind" division or assignment of the Pension Plans via equitable distribution in the State Court post-discharge without fear of violating the § 524(a)(2) discharge injunction, and (b) is, by virtue of the § 524(a)(2) discharge injunction, enjoined from henceforth attempting to obtain via such equitable distribution any sort of equalization relief.